**No. 25-10606-J & No. 25-11531**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

**FIRST SOLAR ELECTRIC LLC,**

**Appellee/Cross-Appellant,**

**v.**

**ZURICH AMERICAN INSURANCE COMPANY,**

**Appellant/Cross-Appellee.**

On Appeal from the United States District Court
for the Middle District of Georgia, Macon Division
Case No. 5:21-CV-00408-MTT, Hon. Marc T. Treadwell, District Judge

---

**BRIEF OF APPELLEE/CROSS-APPELLANT
FIRST SOLAR ELECTRIC LLC**

---

Justin P. Gunter
Bradley Arant Boult Cummings LLP
1230 Peachtree Street NE, 21st Floor
Atlanta, Georgia 30309
Tel: (404) 868-2100

Richard H. Monk III
Emily M. Ruzic
1819 Fifth Avenue North
Birmingham, AL 35203-2119
Tel: (205) 521-8000

Alex Purvis
Bradley Arant Boult Cummings LLP
188 E. Capitol Street, Suite 1000
Jackson, MS 39201
Tel: (601) 948-8000

F. Faison Middleton, IV
Watson Spence LLP
P.O. Box 2008
Albany, GA 31702-2008
Tel: (229) 436-1545

*Counsel for First Solar Electric LLC*

No. 25-10606-J, *First Solar Electric LLC v. Zurich American Insurance Company*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26 and 11th Cir. R. 26.1-1, 26.1-2, and 26.1-3, Appellee/Cross-Appellant First Solar Electric LLC hereby certifies that the Certificate of Interested Persons in Appellant's Brief is complete to Appellee's knowledge.

## STATEMENT REGARDING ORAL ARGUMENT

Appellee/Cross-Appellant First Solar Electric LLC does not believe that oral argument is necessary. This routine appeal of summary judgment rulings and a jury verdict is controlled by this Court's and the Georgia Supreme Court's well-established precedents. The legal issues are neither novel nor complex.

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT ................................................. I

TABLE OF CONTENTS ..................................................................................... II

TABLE OF CITATIONS ...................................................................................... V

STATEMENT OF JURISDICTION ..................................................................... X

STATEMENT OF THE ISSUES ........................................................................... 1

STATEMENT OF THE CASE ................................................................................ 1

    I.    Statement of Facts. ................................................................................. 4

        *A. The Twiggs Solar Project and Zurich's All Risk Builders Policy..4*

        *B. First Solar Makes Claims Under the Zurich Policy for Rainstorm Damage. ......................................................................................... 6*

        *C. Zurich's Adjustment and Payment of the Claims as "Water Damage." ...................................................................................... 8*

        *D. Zurich's Payment Denial. ............................................................ 10*

    II.    Course of Proceedings and Disposition Below. ................................. 10

    III.    Standard of Review. ........................................................................... 16

SUMMARY OF ARGUMENT ........................................................................... 17

ARGUMENT AND CITATIONS OF AUTHORITIES ....................................... 21

    I.    The District Court Correctly Held that Zurich Waived its Position on the Deductible Condition Applicable to First Solar's Covered Claims. ............................................................................................... 21

        *A. Georgia Law Permits Insurers to Waive Any Policy Condition or Limitation, Including a Deductible Condition. ................................ 21*

        *B. The Inapposite Out-Of-State Cases Zurich Cites Do Not Bar Waiver of a Deductible by Conduct. ............................................... 26*

C. *Zurich's New Argument that the Undisputed Facts Fail to Establish Waiver Is Not Properly Before the Court and Ignores Georgia Law.*..................................................................28

II. The District Court Correctly Interpreted the Suit Against the Company Provision......................................................................32

A. *The Suit Against the Company Provision Provides a Time-Expansion, Not a Time-Limitation.* .....................................32

B. *First Solar's Interpretation Is the Only Reasonable Interpretation Considering the Contract as a Whole.* ..............................36

C. *Zurich's Contention that the District Court Applied a Medical Malpractice Statute of Limitation Is Misleading.* ....................37

D. *Zurich's "Converse Interpretation" Is Unreasonable and Self-Defeating.* .....................................................................38

E. *Alternatively, the Suit Provision Is Ambiguous and Must be Interpreted in First Solar's Favor.*............................................40

F. *Alternatively, Georgia's Queen Tufting Rule Requires a Six-Year Limitation Period.* ............................................................42

III. The District Court Properly Denied Zurich's Last-Ditch Sanctions Motion and Zurich Waived Any Objection or Right to New Trial.....43

A. *First Solar Disclosed the Documents upon Which Its Computation of Damages Was Based.* .......................................................43

B. *First Solar Produced All Documents Submitted at Trial and Disclosed All Witnesses Who Testified.* ..................................46

C. *Zurich's Last-Ditch Sanctions Motion Also Fails Procedurally.* 49

IV. Alternatively, if the Court Does Not Affirm, the District Court Erred in Holding the Applicable Deductible Was $2.5 Million. ...................51

A. *The Plain Language of the Policy Controls Over the Project Certificate and Requires a $100,000 Deductible Based on the Location of the Insured Project.*..........................................................52

B. *First Solar Presented Sufficient Evidence for a Jury to Reform the Mistakenly Identified the Flood Zone.* ...................................55

C. *Zurich Did Not Prove an "Unusual and Rapid" Accumulation as Required to Establish that the Cause of Loss was "Flood."* ..............57

CONCLUSION ...........................................................................................61

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Alan Corp. v. Int'l Surplus Lines Ins. Co.*,
823 F. Supp. 33 (D. Mass. 1993)........................................................................27

*Am. Home Assur. Co. v. Ozburn-Hessey Storage Co.*,
817 S.W.2d 672 (Tenn. 1991) .............................................................................28

*Appalachian Ins. Co. v. United Postal Sav. Ass'n*,
422 So. 2d 332 (Fla. Dist. Ct. App. 1982)..........................................................27

*In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*,
85 F.4th 1070 (11th Cir. 2023) ...........................................................................50

*Canal Ins. Co. v. Bryant*,
173 Ga. App. 173, 325 S.E.2d 839 (1984) ..........................................................59

*Carrizosa v. Chiquita Brands Int'l, Inc.*,
47 F.4th 1278 (11th Cir. 2022) ...........................................................................60

*Cherokee Credit Life Ins. Co. v. Baker*,
119 Ga. App. 579, 168 S.E.2d 171 (1969) .....................................................54, 55

*Claussen v. Aetna Cas. & Sur. Co.*,
259 Ga. 333, 380 S.E.2d 686 (1989) ..................................................................23

*Columbian Nat'l Life Ins. Co. v. Miller*,
140 Ga. 346, 78 S.E. 1079 (1913) .......................................................................60

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
543 U.S. 157 (2004)..............................................................................................33

*Danforth v. Gov't Emps. Ins. Co.*,
282 Ga. App. 421, 638 S.E.2d 852 (2006) ..............................................18, 24, 30

*Dupree v. Owens*,
92 F.4th 999 (11th Cir. 2024) .............................................................................28

*Encompass Ins. Co. v. Friedman*,
   299 Ga. App. 429, 682 S.E.2d 694 (2009) ........................................34

*Evans v. Pac. Nat'l Fire Ins. Co.*,
   367 S.W.2d 85 (Tex. Civ. App. 1963).................................................27

*Faraday Cap. Ltd. v. 325 Goodrich Ave., LLC*,
   No. 5:10-CV-278, 2012 WL 2990379 (M.D. Ga. July 20, 2012) .......................23

*FindWhat Inv. Grp. v. FindWhat.com*,
   658 F.3d 1282 (11th Cir. 2011) ......................................................16

*Forsyth Cnty. v. Waterscape Servs., LLC*,
   303 Ga. App. 623, 694 S.E.2d 102 (2010) ..........................................22

*Frey v. Nationwide Mut. Ins. Co.*,
   371 Ga. App. 590, 901 S.E.2d 730 (2024) ..........................................39

*Ga. Farm Bureau Mut. Ins. Co. v. Huncke*,
   240 Ga. App. 580, 524 S.E.2d 302 (1999) ..........................................38

*Ga. Farm Bureau Mut. Ins. Co. v. Meyers*,
   249 Ga. App. 322, 548 S.E.2d 67 (2001) ...........................................40

*GEICO Indem. Co. v. Whiteside*,
   311 Ga. 346, 857 S.E.2d 654 (2021) ...............................................22

*Harper v. Liberty Nat'l Life Ins. Co.*,
   645 F. Supp. 260 (M.D. Ga. 1986) ................................................24

*Int'l Bankers Ins. Co. v. Arnone*,
   552 So. 2d 908 (Fla. 1989) .........................................................27

*Jefferson Amusement Co. v. Lincoln Nat'l Life Ins. Co.*,
   409 F.2d 644 (5th Cir. 1969) ......................................................60

*Jones v. Pac. Mut. Life Ins. Co.*,
   57 Ga. App. 16, 194 S.E. 249 (1937) ...............................................21

*JPMorgan Chase Bank v. Cronan*,
   355 Ga. App. 556, 845 S.E.2d 298 (2020) ..........................................57

- vi -

*Kellner v. NCL (Bahamas), LTD.*,
753 F. App'x 662 (11th Cir. 2018) ...........................................................35

*Kirschner v. Process Design Assocs., Inc.*,
592 N.W.2d 707 (Mich. 1999)................................................................27

*Lester v. Great Cent. Ins. Co.*,
138 Ga. App. 353, 226 S.E.2d 149 (1976) ..........................................39

*M.A. Mortenson Co. v. Indem. Ins. Co.*,
No. CIV.98-2319/RHK/JMM, 1999 WL 33911358 (D. Minn. Dec.
23, 1999) .......................................................................................32, 36

*Mahens v. Allstate Ins. Co.*,
No. 1:10-CV-174-TWT, 2011 WL 1321578 (N.D. Ga. Apr. 1,
2011) .............................................................................................24, 30

*Martin v. U.S. Fid. & Guar. Co.*,
996 S.W.2d 506 (Mo. 1999) (en banc) ...............................................27

*McBride v. Carnival Corp.*,
102 F.4th 1194 (11th Cir. 2024) ..........................................................49

*McEver v. Nw. Mut. Life Ins. Co.*,
629 F. Supp. 3d 1340 (M.D. Ga. 2022) ..............................................40

*Monitronics Int'l, Inc. v. Veasley*,
323 Ga. App. 126, 746 S.E.2d 793 (2013) ..........................................39

*Morrison Assur. Co. v. Armstrong*,
152 Ga. App. 885, 264 S.E.2d 320 (1980) ..........................................54

*Northland Ins. Co. v. Am. Home Assurance Co.*,
301 Ga. App. 726, 689 S.E.2d 87 (2009) ............................................23

*Nw. Steel Erection Co. v. Zurich Am. Ins. Co.*,
No. 4:07CV3184, 2008 WL 187687 (D. Neb. Jan. 18, 2008)................19, 32, 40

*Oakland-Macomb Interceptor Drain Drainage District v. Zurich
American Insurance Co.*,
No. 13-cv-12399, 2013 WL 5638755 (E.D. Mich. Oct. 15, 2013) ...................33

*Prescott's Altima Datsun, Inc. v. Monarch Ins. Co.*,
253 Ga. 317, 319 S.E.2d 445 (1984) ......................................................22, 24

*Primary Invs., LLC v. Wee Tender Care III*,
323 Ga. App. 196, 746 S.E.2d 823 (2013) ........................................................35

*Queen Tufting Co. v. Fireman's Fund. Ins. Co.*,
239 Ga. 843, 239 S.E.2d 27 (1977) ..................................................................42

*Rasmussen v. Martin*,
236 Ga. 267, 223 S.E.2d 663 (1976) ................................................................57

*Rogers v. Am. Nat'l Ins. Co.*,
145 Ga. 570, 89 S.E. 700 (1916) ......................................................................21

*Ruckh v. Salus Rehab., LLC*,
963 F.3d 1089 (11th Cir. 2020) ........................................................................28

*S. Ry. Co. v. State Farm Mut. Auto. Ins. Co.*,
477 F.2d 49 (5th Cir. 1973) ..............................................................................60

*Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs.,
Inc.*,
601 F.3d 1159 (11th Cir. 2010) ........................................................................22

*\* Sargent v. Allstate Ins. Co.*,
165 Ga. App. 863, 303 S.E.2d 43 (1983) ...................................................*passim*

*Serra Chevrolet, Inc. v. Gen. Motors Corp.*,
446 F.3d 1137 (11th Cir. 2006) ..................................................................16, 43

*Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*,
75 F.4th 1290 (11th Cir. 2023) ........................................................................51

*Spivey v. Whiddon*,
260 Ga. 502, 397 S.E.2d 117 (1990) ................................................................37

*Stacy v. Bar Plan Mut. Ins. Co.*,
621 S.W.3d 549 (Mo. Ct. App. 2021) ..............................................................27

*SunTrust Mortg., Inc. v. Ga. Farm Bureau Mut. Ins. Co.*,
203 Ga. App. 40, 416 S.E.2d 322 (1992) ........................................................34

*Thornton v. Ga. Farm Bureau Mut. Ins. Co.*,
  287 Ga. 379, 695 S.E.2d 642 (2010) ...................................................34

*Valles v. State Farm Fire & Cas. Co.*,
  No. 1:19-cv-05593 (N.D. Ga. Mar. 29, 2021), Dkt. 60-2...................34

*Valles v. State Farm Fire & Cas. Co.*,
  No. 1:19-CV-5593-MLB, 2021 WL 3207842 (N.D. Ga. July 29,
  2021) .................................................................................................34

*W. Heritage Ins. Co. v. Asphalt Wizards*,
  795 F.3d 832 (8th Cir. 2015) ......................................................27, 28

*Whitcomb v. Bank of Am.*,
  365 Ga. App. 795, 880 S.E.2d 310 (2022) ..........................................57

*Willis v. Allstate Ins. Co.*,
  334 Ga. App. 540, 779 S.E.2d 744 (2015) ..........................................34

*Yeazel v. Burger King Corp.*,
  241 Ga. App. 90, 526 S.E.2d 112 (1999) ............................................55

*Yellow Pages Photos, Inc. v. Ziplocal, LP*,
  795 F.3d 1255 (11th Cir. 2015) ....................................................50, 51

*Zurich Am. Ins. Co. v. Bruce*,
  193 Ga. App. 804, 388 S.E.2d 923 (1989) ....................................41, 55

**Statutes**

O.C.G.A. § 9-3-72.......................................................................................37

O.C.G.A. § 13-2-1.......................................................................................59

O.C.G.A. § 13-2-2..................................................................................35, 38

**Other Authorities**

Rule 26 ...........................................................................................20, 43, 44, 45

## STATEMENT OF JURISDICTION

This is an appeal from a final judgment of the United States District Court for the Middle District of Georgia, Macon Division. The District Court had diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332. (*See* Doc. 1 at 5.)

Appellant/Cross-Appellee Zurich American Insurance Company ("Zurich") filed a notice of appeal pursuant to Fed. R. App. P. 4(a)(1) on February 21, 2025, within thirty days after the District Court entered its final judgment on January 24, 2025. (Docs. 205; 214.) This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

Shortly after filing its notice of appeal, Zurich also filed post-judgment motions for renewed judgment as a matter of law, new trial, and to amend the judgment. (Docs. 215; 216.) The pendency of those motions tolled Zurich's notice of appeal until they were denied by the District Court on April 17, 2025. (Doc. 227.) Zurich did not timely appeal the District Court's Order denying Zurich's post-judgment motions for renewed judgment as a matter of law, new trial, and to amend the judgment. Accordingly, the District Court's ruling on those motions is not before the Court.

Appellee/Cross-Appellant First Solar Electric LLC ("First Solar") timely filed its notice of a conditional cross-appeal on May 1, 2025. (Doc. 228.)

- x -

## STATEMENT OF THE ISSUES

1.    Whether the District Court correctly granted First Solar partial summary judgment by holding that Georgia law allowing waiver of any policy "condition or limitation" permitted Zurich to waive its position on the applicable deductible condition?

2.    Whether the District Court correctly granted First Solar partial summary judgment that the Policy's "Suit Against the Company" provision was not a one-year contractual limitation but rather a permissive "discovery" provision?

3.    Whether the District Court correctly denied Zurich's eleventh-hour sanctions motion by holding that First Solar had complied with disclosure requirements and that Zurich had not made a timely objection?

4.    Conditionally, whether the District Court erred in granting Zurich partial summary judgment that a $2,500,000 deductible applied to First Solar's claims absent waiver?

## STATEMENT OF THE CASE

This appeal concerns Appellant/Cross-Appellee Zurich American Insurance Company's insurance coverage obligations to Appellee/Cross-Appellant First Solar Electric LLC. Zurich challenges the District Court's holdings that Zurich waived its position on the applicable deductible, that First Solar timely filed suit, and that First Solar properly disclosed its damages.

First Solar's claims are for water damage caused by five rainstorms between December 2019 and April 2020 that severely impacted the construction of a $185 million solar farm outside of Warner Robins, Georgia. First Solar purchased a Master Builders Risk Policy (the "Policy") from Zurich to insure the construction project. In that Policy, Zurich agreed to insure First Solar "against all risks of direct physical loss of or damage to the Covered Property" and specifically agreed to cover First Solar for "[a]ll damage caused by water, whatever the source."

First Solar promptly submitted claims (the "Claims") to Zurich for the rainstorm damage following each storm. Zurich confirmed the Policy covered the Claims and verified that the cause of loss was "Water Damage" such that the Policy's $100,000 "Water Damage" deductible applied to the Claims. Zurich made initial payments of $600,000 to First Solar based on Zurich's coverage and deductible determinations. Then, in March 2021—more than a year after all but the last rainstorm—Zurich reversed course when its litigation counsel sent First Solar a letter asserting that a $2.5 million "Flood" deductible applied to each rainstorm such that Zurich would not pay the Claims.

Less than seven months later (and after a failed mediation), this case ensued. At the outset of discovery, First Solar fully disclosed the damages it ultimately sought at trial and the documents upon which First Solar based its calculation. Over the following three years of litigation, Zurich repeatedly tried to evade its coverage

- 2 -

admissions and obligations. Two of those attempts are at issue in this appeal. First, Zurich argued that its belated position on the applicable deductible (i.e., "Water Damage" vs. "Flood") could not be waived under Georgia law. Zurich never *factually* disputed its course reversal or that its belated reversal was sufficient to establish waiver. Instead, Zurich argued that its position on the applicable deductible was *legally* immune to waiver. The District Court disagreed and correctly applied Georgia law holding that an insurer "may waive any condition or limitation in the policy."

Second, Zurich argued that First Solar's suit was barred by the Policy's "Suit Against the Company" provision, which Zurich asserted was a one-year contractual limitation period. That provision provides (in relevant part) that "[a]ny action . . . will not be barred if commenced within **(12) twelve** months after the **OCCURRENCE\*** becomes known to the Named Insured." The District Court again disagreed with Zurich and correctly explained the Suit Against the Company provision was a contractual "discovery" rule because it dictated only when a suit "will *not* be barred."

Eventually, Zurich's liability to First Solar came before a jury. Over a week-long jury trial, First Solar painstakingly introduced evidence establishing its damages. Every document First Solar used at trial had been produced in discovery, and every First Solar witness had been disclosed in First Solar's initial disclosures

and in the pretrial order. On the last day of trial, however, Zurich moved for case-dispositive sanctions alleging for the first time that First Solar had failed to disclose its first witness and the alleged damages on which he testified. The District Court preliminarily informed Zurich that it would deny the motion due to Zurich's admitted failure to make a timely trial objection. Afterwards, the District Court denied the motion in a detailed order thoroughly discrediting Zurich's allegations.

At the end of the case, the jury awarded First Solar all damages it sought at trial, less $3,000.

## I.    Statement of Facts.

### A.    The Twiggs Solar Project and Zurich's All Risk Builders Policy.

In February 2018, First Solar agreed with Twiggs County Solar LLC to construct a solar power plant project in Twiggs County, Georgia (the "Twiggs Project"). (Doc. 200-2 at 2.) The Twiggs Project is a more-than-1,000-acre solar power plant with a total project value exceeding $185 million. (Docs. 90-16 at 6; 101-10 at 13; 200-1 at 75.)

Prior to the Twiggs Project, First Solar purchased a Master Builders Risk Policy from Zurich with a Policy period covering August 24, 2017, through August 24, 2020. (Doc. 200-1 at 5.) The Policy is an "all risk" builders risk policy in which Zurich agreed to insure First Solar "against all risks of direct physical loss of or damage to Covered Property while at the location of the **INSURED PROJECT***

- 4 -

and occurring during the Policy or Certificate Term." (*Id.* at 14.) The Policy limits Zurich's payment obligation for a covered claim by a deductible that varies depending on the cause of loss. (*Id.* at 23.) Zurich has never disputed that "Water Damage" and "Flood" are covered causes of loss. (*Id.* at 30–31, 33.)

In 2018, Zurich issued a "Project Certificate" to cover the Twiggs Project under the Policy. (Doc. 200-1 at 74–76.) The Project Certificate also listed the deductible amounts Zurich concluded applied to the Twiggs Project. (*Id.* at 75.) According to the Policy, the amount of the "Flood" deductible varies by the particular flood zone in which the "Insured Project" was located. (*Id.* at 36.) Thus, Zurich should have identified the location of the "Insured Project," which is the location of the "[w]ork which the Insured is contractually obligated to perform." (*See id.* at 31.) Instead, Zurich based its determination on the total 2,741-acre parcel (which it called the "project site") belonging to Twiggs County Solar LLC *without determining the actual location of the 1,000 acre "Insured Project."* (*See* Docs. 90-12 at 2; 84-1 at 14, 16, 25, 52–53; 83-2 at 41.) Zurich chose to assign the highest Flood Level 1 deductible because a portion of the 2,741-acre site was located in Flood Zone A next to Flat Creek. (Docs. 84-1 at 25, 52–53; 90-14 at 2.) In reality, the "Insured Project" was constructed entirely in Flood Zone Unshaded X, (Doc. 90-7 at 14, 16–17), which should have been subject to the lowest $100,000 Flood Level 3 deductible, (*see* Doc. 200-1 at 36). Zurich never corrected the "Flood"

deductible but acknowledged that the deductible should have been set based on "the exact location and footprint of the project," not the total parcel or site owned by Twiggs County Solar LLC. (*See* Doc. 90-12 at 2.)

### B. First Solar Makes Claims Under the Zurich Policy for Rainstorm Damage.

On or about December 13, 2019; February 5, 2020; February 13, 2020; March 3, 2020; and April 18, 2020, five rainstorms damaged the Twiggs Project. (Doc. 200-2 at 2.) Different portions of the Twiggs Project were in various stages of construction at the times of these storms, and a large portion of the project consisted only of earthworks, footings, and electrical groundwork upon which the solar arrays would be installed. (*E.g.*, Docs. 90-22 at 18; 90-24 at 3–4.) These repeating rainstorms caused substantial damage to the unfinished construction requiring significant repairs to the Twiggs Project. (Doc. 90-24 at 3; *see also* Docs. 86-1; 90-7 at 27; 90-20 at 15; 90-25.) While the rainstorms left standing water, Zurich's description of the rainstorms as "flood events" is misleading. (*Cf.* Appellant's Br. 2.) Setting aside the contested issue of whether the cause of loss was "Water Damage" or "Flood" as those terms are defined by the Policy, Zurich stipulated that the Twiggs Project experienced "heavy rain events" and that the "Insured Project" was damaged by "[e]ach rain event." (Doc. 200-2 at 2.) All damage to the Twiggs Project was caused by rain. (*See* Doc. 85-1 at 34–35.)

First Solar timely submitted claims to Zurich for each rainstorm. (*See* Docs. 88-16; 88-17; 88-18; 88-19; 88-20; *see also* Doc. 200-2 at 2.) Zurich assigned adjuster Scott Klaben to manage First Solar's Claims. (Doc. 200-2 at 2.) Klaben reviewed the information submitted by First Solar as to the extent and cause of First Solar's loss and personally inspected the Twiggs Project. (Docs. 86-1 at 201; 90-20 at 24.)

Following Klaben's inspection, review, and assessment, Zurich confirmed the Policy covered the Claims and verified the cause of the loss was "Water Damage" such that the Policy's "Water Damage" deductible applied to the Claims. (*E.g.*, Docs. 86-2 at 6; 90-22 at 15; 90-28 at 3.) Zurich's contention that "Zurich never put this into writing" is wrong. (*Cf.* Appellant's Br. 6.) Zurich confirmed its position on coverage and the applicable deductible both verbally and in writing and commenced adjusting the Claims based on these confirmed positions. (*E.g.*, Docs. 86-2 at 4, 6; 90-22 at 15; 90-28 at 3.) On February 8, 2020, Klaben noted, "This loss if [*sic*] for water damage to the roads and washed out areas around the solar paneling array for this Builder's Risk Claim." (Doc. 86-1 at 201.) On February 20, Klaben recorded the February 5, 2020 loss on the Zurich system, answering "[n]o" to the question "[w]as the loss caused by a flood." (Doc. 86-2 at 4.) On February 21, Klaben sent an internal email to his boss estimating Zurich's total exposure for the first three claims and noting each claim carries a $100,000 deductible. (Doc. 90-28 at 3.)

**C.    Zurich's Adjustment and Payment of the Claims as "Water Damage."**

Over the ensuing months, Klaben continued adjusting the Claims as "Water Damage" claims. In June 2020, Zurich approved three $200,000 advance payments based on the "Water Damage" deductible. (*See, e.g.*, Doc. 86-1 at 196.) Zurich made these payments unconditionally and without any reservation of rights. (*See* Docs. 90-29; 85-1 at 20.) Zurich's characterization that these payments were made "early in the adjustment process" is highly misleading. (*Cf.* Appellant's Br. 2.) In fact, these payments were made almost six months *after* the first rainstorm, *after* all material facts concerning the cause of loss were already known to both parties, and *after* Zurich had already determined that the cause of loss was "Water Damage." Zurich's claim that these advance payments "do not reflect any deductible information" is likewise incorrect. (*Cf. id.* at 7.) Klaben specifically noted that the $200,000 advances were approved because "claimed damages per Insured [equal] $577K and *so less $100K deductible we noted/in agreement with Insured* for $200K advance request." (Doc. 86-1 at 196 (emphasis added).) Zurich admitted in discovery that "it looked like" Zurich was applying a $100,000 deductible in making these advance payments. (Doc. 85-1 at 42.) And First Solar likewise understood those advance payments were made consistent with Zurich's position that a $100,000 deductible applied. (Doc. 90-22 at 15.)

Following these advance payments, Zurich continued to adjust the Claims. (*See* Doc. 200-2 at 2.) Almost two months after the advance payments, in August 2020, Zurich sent First Solar a "status report and update." (Doc. 90-30 at 2.) That letter vaguely purported to "bring to [First Solar's] attention" the Policy's definition of "Flood" but did not take the position that the Claims were caused by "Flood" or indicate that Zurich was altering its prior determination that the cause of loss was "Water Damage." (*Id.*) Zurich's characterization of this letter on appeal as a "reservation of rights letter" is wrong. (*Cf.* Appellant's Br. 7.) Zurich confirmed in discovery that this was not a reservation of rights letter. (Doc. 85-1 at 20.)

Given the ambiguous nature of Zurich's August letter, First Solar responded to make clear that the cause of loss was "Water Damage" and to explain that First Solar "respectfully disagree[d] to the extent [Zurich's] letter suggests that the claim(s) at issue fall within the Policy's definition of FLOOD." (Doc. 90-31 at 2.) Zurich did not respond further. But Zurich continued to adjust the Claims and noted that the Claims were "still pending." (Doc. 90-30 at 3.) As late as March 15, 2021 (over a year after most of the rainstorms), Zurich provided a status update that it was "[s]till working on it." (Doc 90-33 at 2.) By that point, Zurich had verified $4,917,303 of First Solar's losses based on the documents and information First Solar submitted with an additional $5,829,038.29 in claimed losses still under review. (Doc. 200-2 at 2–3.)

**D.    Zurich's Payment Denial.**

On March 22, 2021, First Solar received a letter from Zurich's litigation counsel, Anthony Morris, denying any payment obligation for the Claims. (Doc. 90-34.) The letter indicated that Zurich was reversing its prior position on the cause of loss and appliable deductible and now maintained that a $2.5 million "Flood" deductible applied instead of the $100,000 "Water Damage" deductible. (*See id.* at 2.) Zurich provided no basis for its changed position when asked in discovery. (Doc. 85-1 at 18, 22, 28, 49.) Immediately upon issuing this letter, Zurich ceased any further investigation, analysis, or adjustment of First Solar's Claims. (Doc. 211 at 138.)

First Solar triggered the Policy's dispute resolution procedure. (Doc. 88-60 at 2.) Zurich's counsel proposed alternative dispute resolution and stated, as of June 23, 2021, that, if the parties were unable to reach resolution through that ADR process, "the parties are free to pursue judicial resolution of the dispute." (Doc. 100-5 at 2.) Zurich did not assert that the Suit Against the Company Provision barred First Solar from filing suit. (*Id.*) The parties' mediation was unsuccessful. (Doc. 100-1 at 13; *see also* Doc. 90-7 at 54.)

**II.    Course of Proceedings and Disposition Below.**

First Solar commenced this action on November 12, 2021. (Doc. 1.) At the outset of discovery, First Solar provided detailed initial disclosures disclosing,

among many other things, Ted Garrett as an "individual likely to have discoverable information." (Doc. 189-2 at 8.) First Solar also disclosed its damages computation and confirmed that this computation was based on the same documents already provided to Zurich during the adjustment process. (*Id.* at 10.) Thereafter, the parties engaged in discovery for nearly twenty months during which First Solar produced 17,448 pages of documents, including all documents First Solar relied upon to compute its damages and all documents it ultimately would admit as evidence at trial. (*See* Docs. 23; 47; 189-2; *see also* Docs. 207 at 2; 208.)

At the close of discovery, First Solar moved for partial summary judgment, (Doc. 82), and Zurich moved for summary judgment, (Doc. 88). First Solar sought summary judgment on the applicable deductible because Zurich had no evidence that the cause of loss was "Flood," because Zurich had waived its deductible position, and because the Policy Certificate's "Flood" deductible should be reformed to reflect the actual location of the "Insured Project." (Doc. 82-1 at 1–2.) Zurich contended that the Policy's Suit Against the Company provision was a one-year contractual limitation that Zurich did not waive the right to rely upon, that First Solar's losses fell below the incorrect $2.5 million "Flood" deductible, that Zurich did not act in bad faith, and that First Solar could not prove a reformation claim. (Doc. 88-1 at 16–36.)

The District Court granted in part and denied in part the parties' competing summary judgment motions in a detailed order. (Doc. 116.) The District Court denied Zurich summary judgment on the Suit Against the Company provision without interpreting the provision, holding instead that a reasonable jury could find that Zurich had waived the provision. (Doc. 116 at 18–22.) As to the deductible, the District Court concluded as a matter of law that the cause of loss was "Flood" but also that Zurich had waived its position on the "Flood" deductible condition by confirming that the cause of loss was "Water Damage," applying a "Water Damage" deductible and making payments based on the "Water Damage" deductible without reservation or condition. (Doc. 116 at 23–37, 39–44.) The District Court granted Zurich summary judgment on First Solar's claims for reformation and bad faith. (Doc. 116 at 38–39, 46–50.)

The District Court's summary judgment order did not resolve the parties' competing interpretations of the Suit Against the Company provision. Accordingly, First Solar moved for leave to file a motion for partial summary judgment on this narrow issue. (Doc. 132.) After the District Court granted First Solar's motion for leave, (Doc. 142), First Solar sought partial summary judgment that the Suit Against the Company provision was a contractual time-expansion (i.e., "discovery" rule), not a time limitation, (Doc. 143). The District Court granted First Solar's motion holding that the phrase "[a]ny action . . . will not be barred if commenced within 12

months after the OCCURRENCE becomes known" was a permissive provision akin to a "discovery rule," not a contractual limitation. (Docs. 164; 174 at 6–7, 13–14.)

In the meantime, the parties prepared for trial. Zurich filed a purported "trial brief" challenging whether First Solar could prove its damages. (Doc. 136.) In response, First Solar candidly explained—almost two months before trial—precisely how it would prove its case:

> First Solar produced extensive documentation to support its damages model. Doc. 90-25 (First Solar Updated Claims Summary). At trial, First Solar will present five claim workbooks, detailing its damages:
>
> - P-85: December 13, 2019 Claim Workbook (FS_006849);
> - P-108: February 5, 2020 Claim Workbook (FS_006847);
> - P-114: February 13, 2020 Claim Workbook (FS_006848);
> - P-134: March 3, 2020 Claim Workbook (FS_006718); and
> - P-136: April 18, 2020 Claim Workbook (FS_006717).
>
> Those workbooks identify the file name of the supporting document for each line item contained within them, which have also been provided to Zurich. *See* Doc. 90-23 (Complete Deposition of Sarah Bane), at 291:18–293:15. First Solar will also introduce each of the supporting documents, which could be over 40 exhibits. *See, e.g.*, P-86 to P-104 (December 13, 2019 Support); P-109 to P-113 (February 5, 2020 Support); P-115 to P-133 (February 13, 2020 Support); P-135 (March 3, 2020 Support); P-137 to P-138 (April 18, 2020 Support); P-139 to P-140 (General Conditions Summary and Data).

*     *     *

> First Solar is prepared to walk through its claim, using the exhibit identified above, with the jury to show how each item fits within the covered items from the policy.

\*     \*     \*

> To the extent there remain concerns from Zurich regarding whether a particular expense was "*actually incurred*" (*see* Doc. 136 at 10) or why it was incurred (e.g., whether it was an "expediting expense" or "extra expense" as defined by the policy, *see id.* at 10-11), First Solar expects that Ted Garrett, Project Manager at the Twiggs Project (listed by First Solar as a "will call" witness) will be able to resolve those concerns. *See also* D-88 to D-113 (identifying Mr. Garrett as the Project Manager). Zurich chose not to depose Mr. Garrett, despite him being identified in First Solar's initial disclosures . . . .

(Doc. 154 at 5–9.) The parties also jointly submitted a proposed pretrial order stating the damages First Solar sought, (Doc. 200 at 4–6); intended witnesses (including Ted Garrett), (Doc. 200 at 7); and exhibit lists, (Docs. 200-3; 200-4; 200-5).

A week-long jury trial commenced on January 13, 2025. Over the first two-and-a-half days of trial, First Solar presented its case-in-chief. (Docs. 209 at 42–99; 210 at 12–233; 211 at 12–138.) As previewed in its damages briefing and at the pretrial conference, First Solar primarily proved its case through Ted Garrett. For each contested portion of its Claims, First Solar individually, methodically, and painstakingly introduced documents and testimony establishing the expense and why it was covered by the Policy. (*See* Docs. 209 at 62–98; 210 at 114–201.) Although Zurich objected to particular questions or exhibits, at no point—including during multiple conferences between the Court and counsel—did Zurich suggest that Mr. Garrett's testimony was in anyway improper or not properly disclosed. (*See*

- 14 -

Docs. 209 at 43–100; 210 at 7–182.) Every exhibit First Solar introduced at trial had been produced during discovery. (*See* Docs. 202-1–202-26.)

First Solar rested its case-in-chief, and over the next day-and-a-half, Zurich presented its defense. (Docs. 211 at 142–212; 212 at 11–97.) Before commencing the final day of trial, the Court asked counsel if there is "[a]nything else we need to talk about," and counsel for both parties responded "[n]o." (Doc. 212 at 10.) Shortly thereafter—without any prior notice and while a witness was testifying—Zurich electronically filed an out-of-the-blue motion seeking case dispositive sanctions for supposed initial disclosure violations. (Doc. 189.)

Zurich did not address the motion at a trial break, so First Solar was forced to bring it to the District Court's attention. (Doc. 212 at 91–92.) The District Court recessed to consider Zurich's motion. (*Id.* at 92.) Upon resuming, the District Court noted that despite "allowing two lawyers to object . . . neither one of them raised these issues; instead, they raised them on the fourth day of trial" and deferred ruling on the motion.[1] (*Id.*) Later in the day, Zurich asked the District Court for a ruling. (*Id.* at 113.) In response, the District Court confirmed that Zurich's counsel had not made a contemporaneous objection. (*Id.*) The Court announced that it would afford

---

[1] As the District Court later noted, it permitted multiple Zurich lawyers to simultaneously object. (Doc. 208 at 4 n.6.) That fact is relevant because, even if one of Zurich's lawyers was so stunned through the two days of Mr. Garrett's testimony that he or she could not object, any one of Zurich's other three lawyers in attendance could have objected.

First Solar an opportunity to oppose the motion on the merits but that it would ultimately deny the motion for lack of contemporaneous objection. (*Id.* at 113–14.)

In addition to the $4,917,303 already verified and conceded by Zurich, the jury awarded First Solar $5,826,038.29 in additional damages along with prejudgment interest. (Doc. 195.) On January 24, 2025, the District Court entered final judgment in First Solar's favor. (Docs. 204; 205.) On February 21, 2025, Zurich filed its notice of appeal. (Doc. 214.) Immediately thereafter, Zurich also filed post-trial motions for renewed judgment as a matter of law, new trial, and to amend the judgment. (Docs. 215; 216.) The District Court denied those motions on April 17, 2025. (Doc. 227.) Zurich did not appeal the denial of its post-trial motions. On May 1, 2025, First Solar filed its conditional notice of cross-appeal. (Doc. 228.)

## III. Standard of Review.

As to the first, second, and fourth issues on appeal, this Court reviews "the district court's grant of summary judgment *de novo*." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (citation omitted).

As to the third issue on appeal, the Court's review of the District Court's order on Zurich's motion for sanctions "is sharply limited to a search for an abuse of discretion." *Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1146 (11th Cir. 2006) (quotation omitted).

# SUMMARY OF ARGUMENT

The District Court's holdings are supported by straightforward analysis applying established law. Zurich skirts these outcome-determinative points because it cannot rebut this analysis and authority head-on. While there are many reasons Zurich's arguments fail, this appeal can be resolved in three sentences, each addressing the dispositive points Zurich skims over or ignores:

1.      Zurich could waive a deductible because, under Georgia law, an insurer "may waive any condition or limitation" in a policy and the Zurich Policy imposes the deductible as a "condition or limitation" both in name and substance.

2.      The plain text of the Suit Against the Company provision does not say what Zurich suggests, and the District Court correctly interpreted the provision as a permissive discovery rule, confirming that a suit "will *not* be barred" if brought within twelve months after the insured discovers an occurrence.

3.      First Solar fully complied with its initial disclosure obligations by disclosing all damages it ultimately sought at trial and producing all documents it relied upon to calculate (and ultimately prove) its damages.

Zurich cannot rebut these straightforward conclusions.

First, Zurich's anti-waiver argument ignores the controlling principle that "[a]n insurer may waive any provision in an insurance policy inserted for its benefit, and *may waive any condition or limitation in the policy* upon which it could

- 17 -

otherwise rely." *Sargent v. Allstate Ins. Co.*, 165 Ga. App. 863, 865, 303 S.E.2d 43, 46 (1983) (emphasis added) (citation omitted). The Policy imposes the deductible as a "condition" and states that deductible amount "shall be deducted from the amount of each claim and the liability of the Company shall be only for the amount of such insured loss or damage in excess thereof." (Doc. 200-1 at 24.)

The cases Zurich cites stand only for the uncontroversial (and inapplicable) proposition waiver cannot "bring within the coverage of a policy risks not covered by its terms." *Danforth v. Gov't Emps. Ins. Co.*, 282 Ga. App. 421, 427, 638 S.E.2d 852, 858–59 (2006) (quotation omitted). Zurich acknowledges they only apply when "the policy does not provide coverage for a loss" and "where [coverage] did not exist in the first place." (Appellant's Br. 16, 18.) Here, Zurich admits coverage exists irrespective of waiver or whether the applicable deductible is "Water Damage" or "Flood." Zurich stipulated that First Solar's "losses [are] covered by the Policy." (Doc. 200-2 at 2.)

Zurich waived its belated *factual* argument by not opposing summary judgment on this basis. Regardless, Zurich again ignores the controlling standard: "[P]ayment by the insurer with knowledge of the pertinent circumstances giving it a policy defense waives its right to rely thereon." *Sargent*, 165 Ga. App. at 865 (quotation omitted). Zurich assessed the damage, determined the cause of loss was "Water Damage," informed First Solar that a $100,000 "Water Damage" deductible

- 18 -

applied, and then paid over $600,000 based on that position. Those facts bar Zurich's attempt to reverse course and apply a different $2.5 million deductible months later.

Second, the plain text of the Suit Against the Company provision establishes that it is not a contractual limitation. It states that a suit "will *not* be barred" if commenced within twelve months after the insured discovers an occurrence. The words "will *not* be barred" can never mean "will [] be barred," and Zurich's purported "converse" interpretation turns the plain meaning on its head. That is why other courts have held that Zurich's suit against the company provision cannot "reasonably be construed as a contractual limitations provision." *See, e.g.*, *Nw. Steel Erection Co. v. Zurich Am. Ins. Co.*, No. 4:07CV3184, 2008 WL 187687, at *4 (D. Neb. Jan. 18, 2008). Contrary to Zurich's argument, the District Court only referenced a medical malpractice discovery rule by "analogy" to explain the operation of discovery rules—not to hold that it supplanted the contractual text. Alternatively, even if the Suit Against the Company provision could plausibly be interpreted as a contractual limitation, that ambiguity must be resolved in First Solar's favor.

Third, the District Court properly denied Zurich's last-day-of-trial sanctions motion both because there was no disclosure violation and because Zurich did not timely object to any admitted evidence. Zurich's counsel admitted Zurich made no timely objection during trial, and Zurich cannot contest the District Court's denial

of its new trial motion because Zurich chose not to appeal that ruling. In any event, First Solar fulfilled its Rule 26 disclosure obligations by disclosing its damages and producing the documents upon which it based its damages computation. Zurich's own pretrial order submissions establish that it understood First Solar's damages, and First Solar disclosed all damages it was ultimately awarded. Likewise, all documents First Solar relied upon to compute (and prove) its damages were produced in discovery. In reality, Zurich does not complain about any omitted disclosure but rather that, when it cross-examined Ted Garrett (whom Zurich did not depose), he mentioned payment and construction records that Zurich had never requested or pursued in discovery. First Solar did not rely upon those documents, and it was Zurich who elicited this testimony at trial.

For these reasons, the Court should affirm the District Court and need not consider First Solar's conditional cross-appeal. Alternatively, however, the District Court erred by holding that, absent waiver, the applicable deductible was $2.5 million in conflict with the plain text of the Policy and improperly granted Zurich summary judgment despite First Solar presenting evidence supporting its reformation claim and Zurich's failure to present evidence establishing that the cause of loss was "Flood."

## ARGUMENT AND CITATIONS OF AUTHORITIES

I.    **The District Court Correctly Held that Zurich Waived its Position on the Deductible Condition Applicable to First Solar's Covered Claims.**

A.    **Georgia Law Permits Insurers to Waive Any Policy Condition or Limitation, Including a Deductible Condition.**

Two points defeat Zurich's contention that its position on the applicable deductible condition was unwaivable. First, "[a]n insurer may waive any provision in an insurance policy inserted for its benefit, and *may waive any condition or limitation in the policy* upon which it could otherwise rely." *Sargent v. Allstate Ins. Co.*, 165 Ga. App. 863, 865, 303 S.E.2d 43, 46 (1983) (emphasis added) (quotation omitted). Second, the deductible is an express "condition" in the Policy. (Doc. 200-1 at 24–25.)

Zurich's contention that the District Court created "new and untenable" law[2] is incorrect. (*Cf.* Appellant's Br. i.) *Sargent*'s holding that an insurer "may waive any condition or limitation" itself applied longstanding Georgia law that "[a]ny provision of a policy made for the company's benefit may be waived by the company." *Jones v. Pac. Mut. Life Ins. Co.*, 57 Ga. App. 16, 194 S.E. 249, 252 (1937); *see also Rogers v. Am. Nat'l Ins. Co.*, 145 Ga. 570, 89 S.E. 700, 702 (1916)

---

[2] Far from being "untenable," Georgia's rule makes sense. Otherwise, an insured could incur expenses based on the insurer's determination and then be left without recourse when the insurer reverses course and refuses to pay. In this case, First Solar was left exposed to over $10 million in expenses following Zurich's reversal.

(holding that insurer could waive a "clause in the policy . . . for the benefit of the insurer"). And, since *Sargent*, the Georgia Supreme Court has repeatedly recognized that an insurer may waive "policy conditions and limitations." *See Prescott's Altima Datsun, Inc. v. Monarch Ins. Co.*, 253 Ga. 317, 318, 319 S.E.2d 445, 446 (1984) (noting general principle that "policy conditions and limitations may be waived"); *GEICO Indem. Co. v. Whiteside*, 311 Ga. 346, 356 n. 18, 857 S.E.2d 654, 664 n.18 (2021) ("[I]t is well settled that an insurance company may waive provisions placed in a policy for its own benefit."). At bottom, these cases just apply the equally "well established [rule] that a party to a contract may waive a contractual provision for his or her benefit." *Forsyth Cnty. v. Waterscape Servs., LLC*, 303 Ga. App. 623, 630, 694 S.E.2d 102, 109 (2010) (citation omitted); *see also Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1182 (11th Cir. 2010) (recognizing Georgia law permits "even a provision against waiver of contractual rights may itself be waived" (quotation omitted)). In particular, "[w]aiver of a contract right may result from a party's conduct showing [the party's] election between two inconsistent rights." *Forsyth Cnty.*, 303 Ga. App. at 630 (quotation omitted).

Zurich does not and cannot reasonably dispute that policy deductibles are a "condition or limitation" or provision for Zurich's benefit. The Policy—drafted by Zurich—expressly includes deductibles in the "Ratings *Conditions*" section of the

- 22 -

Policy, which contains various conditions for coverage of an Insured Project. (Doc. 200-1 at 24 (emphasis added).) The Policy likewise makes clear that the deductible *limits* Zurich's payment obligation. It provides the deductible amount "shall be deducted from the amount of each claim and the liability of the Company shall be only for the amount of such insured loss or damage in excess thereof." (*Id.*) Functionally, the deductible benefits the insurer and acts as a condition or limitation "deducting" an amount from the insurer's payment obligation.[3] Georgia courts repeatedly refer to deductibles as "conditions." *See, e.g.*, *Northland Ins. Co. v. Am. Home Assurance Co.*, 301 Ga. App. 726, 727, 689 S.E.2d 87, 88 (2009) (referring to "deductible conditions"); *Faraday Cap. Ltd. v. 325 Goodrich Ave., LLC*, No. 5:10-CV-278, 2012 WL 2990379, at *6 (M.D. Ga. July 20, 2012) (referring to deductibles as "conditions").

Zurich makes sweeping claims about Georgia law but cites no authority supporting its position that a deductible is immune from Georgia's rule that any policy condition or limitation can be waived. In fact, ***Zurich's brief does not cite a single Georgia case addressing a deductible or any analogous policy provision***. Instead, each Georgia case Zurich cites only stands for the unremarkable proposition

---

[3] Even if there were any ambiguity as to whether the deductible is a condition or limitation, that ambiguity would be resolved in favor of First Solar. "[I]f an insurance contract is capable of being construed two ways, it will be construed against the insurance company and in favor of the insured." *Claussen v. Aetna Cas. & Sur. Co.*, 259 Ga. 333, 334–35, 380 S.E.2d 686, 688 (1989).

that waiver is "not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom." *Danforth v. Gov't Emps. Ins. Co.*, 282 Ga. App. 421, 427, 638 S.E.2d 852, 858–59 (2006) (quotation omitted). In each case, the policy did not cover the claim. *See Harper v. Liberty Nat'l Life Ins. Co.*, 645 F. Supp. 260, 265 (M.D. Ga. 1986) (life insurance policy provided no coverage because it expired four months before insured's death); *Prescott's*, 170 Ga. App. at 547 (automobile insurance policy provided no coverage because it expired nearly a month before car accident); *Danforth*, 282 Ga. App. at 427–28 (policy provided no coverage where car involved in accident had been previously deleted from automobile insurance policy); *Mahens v. Allstate Ins. Co.*, No. 1:10-CV-174-TWT, 2011 WL 1321578, at *3–4 (N.D. Ga. Apr. 1, 2011) (homeowners policy provided no coverage where the insured never lived at the property).

Even if the cases Zurich cites reflected current Georgia law,[4] they only state—in Zurich's own words—that "*coverage* cannot be created by waiver *where it did not exist in the first place.*" (Appellant's Br. 16 (emphasis added).) They do not bar

---

[4] Zurich's authorities rely solely on Georgia Court of Appeals decisions. The only time this rule has been squarely considered by the Georgia Supreme Court, the Court "decline[d] to adopt the proposition of law that . . . the defense of noncoverage can never be waived." *Prescott's*, 253 Ga. at 318. Then, in *Hoover v. Maxum Indemnity Co.*, the Court held that, when an insurer denies coverage, it is limited to the defenses that it relied upon in its denial letter—*all* others are waived. 291 Ga. 402, 405, 730 S.E.2d 413, 417 (2012); *see also id.* at 421 (Melton, J., dissenting) (explaining that majority's "new rule of law" would force an insurer "to list **all** defenses in their initial denial letter" (emphasis added)).

- 24 -

waiver of a policy limitation or condition *where a covered claim already exists*. To the contrary, Georgia courts consistently hold that insurers can waive a great number of policy provisions, including those relating to title or ownership, other insurance or cancellation of other insurance, pre-existing health conditions, and the location of insured property. *See Sargent*, 165 Ga. App. at 865–66 (collecting cases). Zurich tries to broaden Georgia's rule to preclude waiver of any provision impacting "risk allocation," but Georgia permits waiver of provisions impacting risk allocation. *See id.* As the District Court correctly concluded, "the 'critical question' is whether the insured 'is seeking to employ the theory of implied waiver to cover a loss not within the coverage of the [] policy.'" (Doc. 116 at 41 (quoting *Sargent*, 165 Ga. App. at 866).) In Zurich's own words, it is only when "the policy does not provide coverage for a loss" that waiver is barred. (Appellant's Br. 18.)

The Policy covered First Solar's Claims. Zurich dispositively stipulated that "First Solar incurred certain losses *covered* by the Policy." (Doc. 200-2 at 2 (emphasis added).) First Solar's losses—whether the cause of loss is "Water Damage" or "Flood"—are "clearly [] risk[s] assumed by [Zurich] under the terms of the contract." *See Sargent*, 165 Ga. App. at 866. Stated otherwise, if the Policy did not cover the risk in the first instance, there would not even be a risk-specific deductible to apply or waive. And a deductible amount could not be "deducted from

the amount of each claim and the liability of the Company," (Doc. 200-1 at 24), if "the Company," i.e. Zurich, was not already liable for the claim in the first instance.

Zurich's waiver does not transform a non-covered claim into a covered claim.[5] Zurich previously acknowledged that "a deductible is not a coverage defense." (Doc. 118 at 2.) Whether the deductible is $100,000 or $2.5 million, the rainstorms were covered "occurrences," and the resulting harm to First Solar was a covered "loss" to "covered property" under the Policy. (*See* Doc. 200-1 at 14–15.) Determination of which deductible applies only serves to condition and limit Zurich's payment obligation for the covered loss. It does not transform a covered loss into an uncovered loss or vice versa. Rather—in Zurich's own words—the deductible only limits "Zurich's obligation to pay a *covered* claim." (Appellant's Br. 21 (emphasis added).) That necessarily means that the deductible provision is not a coverage defense but rather a "condition or limitation in the policy" waivable under *Sargent*. *See* 165 Ga. App. at 865.

## B. The Inapposite Out-Of-State Cases Zurich Cites Do Not Bar Waiver of a Deductible by Conduct.

Because Georgia law is contrary to its position, Zurich cites several out-of-state cases for various propositions. These cases cannot contravene Georgia's rule

---

[5] Although Zurich frequently speaks in terms of waiving a deductible, technically, the deductible is not being waived—only Zurich's ability to reverse course on which deductible applies. No one disputes that *a* deductible applies to the Claims. The dispute is over *which* deductible.

that an insurer may waive any policy "condition or limitation." Regardless, Zurich *does not cite a single case that stands for the general proposition that an insurer cannot waive a deductible*. Most of the out-of-state cases Zurich cites do not even address waiving deductibles but only discuss general principles about deductibles or waiver. *See, e.g.*, *Martin v. U.S. Fid. & Guar. Co.*, 996 S.W.2d 506 (Mo. 1999) (en banc) (does not address deductible); *Alan Corp. v. Int'l Surplus Lines Ins. Co.*, 823 F. Supp. 33 (D. Mass. 1993) (same); *Stacy v. Bar Plan Mut. Ins. Co.*, 621 S.W.3d 549 (Mo. Ct. App. 2021) (same); *Kirschner v. Process Design Assocs., Inc.*, 592 N.W.2d 707 (Mich. 1999) (same); *Appalachian Ins. Co. v. United Postal Sav. Ass'n*, 422 So. 2d 332 (Fla. Dist. Ct. App. 1982) (no reference to waiver or estoppel); *Int'l Bankers Ins. Co. v. Arnone*, 552 So. 2d 908 (Fla. 1989) (same).

The only cases cited by Zurich that address waiver of a deductible did not announce any general rule but only held an insurer had not waived a deductible by omitting it from a reservation of rights letter or failing to plead it as an affirmative defense. *Cf. W. Heritage Ins. Co. v. Asphalt Wizards*, 795 F.3d 832, 837 (8th Cir. 2015) (omission from reservation of rights letter); *Evans v. Pac. Nat'l Fire Ins. Co.*, 367 S.W.2d 85, 86 (Tex. Civ. App. 1963) (insurer did not plead deductible as an affirmative defense). Those cases are unremarkable because whether a deductible is a "defense to coverage" or affirmative defense that must be asserted in a reservation of rights letter or pleading is a substantially different question from whether Zurich's

- 27 -

intentional confirmation and payment of a claim under one deductible constitutes waiver or estops it from reversing course and applying a different deductible months later. If anything, *West Heritage*'s holding that a deductible is not a "defense to coverage" only reaffirms that deductibles are payment conditions that may be waived under Georgia law, not coverage provisions. *Cf.* 795 F.3d at 837. Even so, other states disagree with *West Heritage* and *Evans*. *See, e.g.*, *Am. Home Assur. Co. v. Ozburn-Hessey Storage Co.*, 817 S.W.2d 672, 674 (Tenn. 1991) (holding insurer waived deductible by assuming defense without a reservation of rights).

## C.    Zurich's New Argument that the Undisputed Facts Fail to Establish Waiver Is Not Properly Before the Court and Ignores Georgia Law.

At the outset, Zurich has not preserved its new contention that a jury must evaluate waiver. *See Dupree v. Owens*, 92 F.4th 999, 1004 (11th Cir. 2024) ("[W]hen the plaintiff fails to respond to the defendant's arguments, any future claims by the plaintiff as to that issue will not be preserved on appeal"). Zurich opposed summary judgment below by arguing only that it was legally impossible to waive a deductible position. (*See* Docs. 102 at 28–29; 112 at 11–12; 116 at 42 n.21.) Zurich never disputed that the undisputed facts established waiver *if* a deductible position could be waived. (*See id.*) This Court should "not address . . . argument[s] that ha[ve] not been raised in the district court" and which certainly have not been "clearly present[ed]" to the District Court "in such a way as to afford the [D]istrict [C]ourt

- 28 -

an opportunity to recognize and rule on [them]." *Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1110–11 (11th Cir. 2020) (quotations omitted).

In any event, Zurich's argument is meritless. Zurich ignores the governing legal standard: "[P]ayment by the insurer with knowledge of the pertinent circumstances giving it a policy defense waives its right to rely thereon." *Sargent*, 165 Ga. App. at 866 (quotation omitted). Applying this standard, the undisputed facts establish waiver. Zurich's adjuster, Klaben, visited the project site on February 7, 2020, to assess the damage and had repeated conversations with First Solar about the nature of the loss and the damage. (*E.g.*, Docs. 86-1 at 201; 86-2 at 6; 90-20 at 24; 90-22 at 15; 90-28 at 3.) Thereafter, Zurich (through Klaben) specifically told First Solar—multiple times—that the claim was a "Water Damage" claim with a $100,000 deductible. (Doc. 90-22 at 15.) At those times, Zurich had full knowledge of the cause of loss, and there is no evidence that any relevant facts were unknown to Zurich or later discovered by Zurich. Simply put, Zurich made a decision on the applicable deductible and confirmed that position with First Solar. Zurich's argument that "Zurich never put this into writing" is wrong. (*Cf.* Appellant's Br. 6.) Klaben noted (in writing) that "water damage" was the cause of loss and that the Claims would be subject to a $100,000 deductible. (Doc. 86-1 at 196, 201.) Likewise, on February 20, 2020, he answered "[n]o" to the question of whether First Solar's losses are "caused by a flood." (Doc. 86-2 at 4.) And, on

February 21, 2020, Klaben authored an internal email conceding a $100,000 deductible applied. (Doc. 90-28 at 3.)

Critically, Zurich not only communicated its "Water Damage" deductible position to First Solar but also made payments to First Solar under the Policy pursuant to its "Water Damage" deductible position. On June 10, 2020, Zurich approved and issued three $200,000 initial payments on the first three rain events. (Doc. 90-29.) These payments were made despite First Solar's adjusted losses not exceeding $2,500,000 and *were explicitly based on the application of a $100,000 "Water Damage" deductible*. Klaben's own notes reflect the calculation: "claimed damages per Insured = $577K and so less $100K deductible we noted/in agreement with insured for $200K advance request." (Doc. 86-1 at 196.)

Zurich's payments—made contrary to a $2,500,000 "Flood" deductible and with full knowledge of the relevant facts—establish waiver. *See Sargent*, 165 Ga. App. at 866. Zurich's citations to *Danforth* and *Mahens* are inapposite because—as explained above—in both "there was no coverage" for the claim under the policy and "the loss is not covered under the Policy." *Danforth*, 282 Ga. App. at 427; *Mahens*, 2011 WL 1321578, at *4. No such issue is present in this case: First Solar's Claims were covered whether the cause of loss was "Water Damage" or "Flood." Nothing in *Danforth* or *Mahens* suggests the facts in this case could not establish waiver.

- 30 -

Zurich's brief largely does not contest the facts establishing waiver but rather focuses on a purported "reservation of rights" letter Zurich sent First Solar on August 4, 2020—nearly two months after it had already made advance payments pursuant to a "Water Damage" deductible position and nearly six months after Zurich's adjuster visited the project site and established "Water Damage" as the cause of loss. At the outset, this letter—issued two months *after* the facts establishing waiver—cannot rescind Zurich's waiver. "Once [Zurich] waived the policy condition . . . the condition could not be reclaimed." *See Sargent*, 165 Ga. App. at 867.

Regardless, Zurich's corporate representative admitted that the August 4 letter was *not* a reservation of rights. (Doc. 85-1 at 20, 38.) Although Zurich obliquely referenced the definition of "Flood"—six months into the adjustment process and after making payments under the Policy—Zurich's August 4 letter did not change its prior position to assert that the cause of loss was "Flood." To the contrary, Zurich continued adjusting First Solar's Claims for *seven additional months*. (*See* Doc. 200-2 at 2.) Zurich did not change its position until its litigation counsel appeared in March 2021. (Doc. 90-34.)

II.    **The District Court Correctly Interpreted the Suit Against the Company Provision.**

    A.    **The Suit Against the Company Provision Provides a Time-Expansion, Not a Time-Limitation.**

Zurich cannot prove that the Suit Against the Company provision (the "Suit Provision") is a one-year contractual limitation because it actually states that a suit against Zurich "will *not* be barred if commenced within **(12) twelve** months after the **OCCURRENCE\*** becomes known to the Named Insured." (Doc. 200-1 at 64 (emphasis added).) It is, therefore, an unambiguous *time-expansion* provision (also known as a "discovery" rule), not a *time-limitation* provision. The Suit Provision sets forth time-expansion via a clear if-then statement: *if* "commenced within **(12) twelve** months after the **OCCURRENCE\*** becomes known to the Named Insured," *then* "[a]ny action or proceeding against the Company for recovery of any loss under this Policy will not be barred." (*Id*.) As the District Court observed, "the policy contains only language permitting an action, and there is no language suggesting an intent to limit the time to sue to twelve months after discovery of the occurrence." (Doc. 177 at 4–5.)

For these same reasons, other courts have held that Zurich's "suit against the company" provision cannot "reasonably be construed as a contractual limitations provision. As written, the provision instead acts as a sort of 'discovery rule' for the insured's benefit by permitting an action to be brought within 12 months after the

occurrence becomes known (or such longer period of time as may be permitted by State law)." *Nw. Steel*, 2008 WL 187687, at \*4; *see also M.A. Mortenson Co. v. Indem. Ins. Co.*, No. CIV.98-2319/RHK/JMM, 1999 WL 33911358, at \*4 (D. Minn. Dec. 23, 1999) (holding the Suit Provision could be interpreted as "a guarantee that a suit that would otherwise be barred under the first sentence will not be barred if brought within twelve months after its occurrence" is discovered).[6]

Zurich advocates a "plain language" interpretation but ignores the plain language of the Suit Provision, including that there is *no limiting language* plausibly creating a contractual limitation. Zurich claims the second sentence of the Suit Provision establishes an "important condition to an action" and sets a "deadline for filing a lawsuit." (Appellant's Br. 29.) But Zurich cannot identify any words creating a condition or imposing a deadline because there are none. Zurich also contends that the end of the second sentence states that the Suit Provision "will supplant an otherwise applicable *statute of limitations*." (*Id.* (emphasis added).) But the actual

---

[6] *Oakland-Macomb Interceptor Drain Drainage District v. Zurich American Insurance Co.*, No. 13-cv-12399, 2013 WL 5638755, at \*3 (E.D. Mich. Oct. 15, 2013)—which Zurich cited to the District Court but correctly omits on appeal—does not defend Zurich's misinterpretation. *Oakland-Macomb* contains no discussion, analysis, or interpretation of the Suit Provision but instead addressed a tolling argument. *See id.* "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) (quotation omitted).

clause *never references a statute of limitation*. Zurich's interpretation relies on words that simply do not exist.

Zurich cannot avoid the text of the Suit Provision by citing other cases that applied *actual* contractual limitations. (*Id.* at 29–32.) Far from supporting Zurich's position, the marked difference between the provisions in these cases and the Suit Provision demonstrate that the Suit Provision is not a contractual limitation. *See, e.g.*, *Thornton v. Ga. Farm Bureau Mut. Ins. Co.*, 287 Ga. 379, 380, 695 S.E.2d 642, 643 (2010) ("[N]o action can be brought unless the policy provisions have been complied with and the action is started one year after the date of the loss."); *Valles v. State Farm Fire & Cas. Co.*, No. 1:19-CV-5593-MLB, 2021 WL 3207842 (N.D. Ga. July 29, 2021) ("No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.");[7] *Encompass Ins. Co. v. Friedman*, 299 Ga. App. 429, 431, 682 S.E.2d 694, 696 (2009) ("No action [against Encompass] can be brought unless the policy provisions have been complied with and the action is started ... [w]ithin one year after the date of loss."); *Willis v. Allstate Ins. Co.*, 334 Ga. App. 540, 542, 779 S.E.2d 744, 746 (2015) ("No suit or action may be brought against us unless there

---

[7] This provision is not quoted in the *Valles* opinion but can be found in the *Valles* record. *See* Ex. A to Def. State Farm Fire & Cas. Co.'s Mot. for Summ. J., *Valles v. State Farm Fire & Cas. Co.*, No. 1:19-cv-05593 (N.D. Ga. Mar. 29, 2021), Dkt. 60-2, at 33, § I(6).

has been full compliance with all policy terms. Any suit or action must be brought within *one year* after inception of loss or damage."); *SunTrust Mortg., Inc. v. Ga. Farm Bureau Mut. Ins. Co.*, 203 Ga. App. 40, 40, 416 S.E.2d 322, 322 (1992) ("No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.").

Try as Zurich might, Zurich does not, and cannot, dispute that the phrase "will not be barred" is a permissive, not limiting, phrase. And, Zurich cannot explain how the "usual and common" meaning of the phrase "will not be barred" could mean "will [] be barred." *Cf.* O.C.G.A. § 13-2-2(2) ("Words generally bear their usual and common signification."). Doing so requires literal removal of the word "not." It turns the unambiguous meaning upside down. No principle of grammar, logic, rhetoric, contractual interpretation, or common sense permits simply ignoring the word "not." Just as "thou shall *not* steal" can never mean "thou shall steal," "will *not* be barred" can never mean "will be barred."[8]

---

[8] Zurich's briefing below also argued the Suit Provision should be interpreted as "negative syntax" and tried to employ various legal and grammatical construction rules. (Doc. 169-2 at 7–10.) Although Zurich has not made these arguments in its Appellant's Brief, they are meritless for the reasons stated in First Solar's prior briefing. (Doc. 175 at 3–5.) Regardless, the Court should not consider these or any other new arguments Zurich tries to make for the first time in a reply brief. *See Kellner v. NCL (Bahamas), LTD.*, 753 F. App'x 662, 667 (11th Cir. 2018) ("[W]e cannot consider arguments raised for the first time in a reply brief.").

**B.     First Solar's Interpretation Is the Only Reasonable Interpretation Considering the Contract as a Whole.**

Zurich concedes that contracts should be interpreted as a whole. (Appellant's Br. 27.) The "favored construction will be that which gives meaning and effect to all the terms of the contract over that which nullifies and renders meaningless a part of the document." *Primary Invs., LLC v. Wee Tender Care III*, 323 Ga. App. 196, 198, 746 S.E.2d 823, 825 (2013) (quotation omitted).

The title, immediate context, and Policy as a whole all reinforce the conclusion that the Suit Provision is a discovery rule operating as a "savings clause" or "safe harbor." (*See* Doc. 158 at 6–8.) The Suit Provision includes twenty-eight different conditions. (Doc. 200-1 at 64.) For example, the Policy states notice of loss must be given in writing within thirty days. (*Id.* at 61.) The first sentence of the Suit Provision strictly bars suit unless the insured "fully" complies with each condition. (*Id.* at 64.) It makes sense that the next sentence is a "safe harbor" or "savings clause" against this otherwise harsh result. Absent the Suit Provision, Zurich might argue that an insured forfeits millions of dollars in coverage because it provided notice on the 31st day instead of the 30th day. This is a reasonable interpretation of the Suit Provision: "[A] suit that would otherwise be barred under the first sentence will not be barred if brought within twelve months after its occurrence." *See M.A. Mortenson Co.*, 1999 WL 33911358, at *4.

- 36 -

In contrast, Zurich's interpretation would render meaningless the Policy's ADR provision, which tolls "[a]ny statute of limitation that may be applicable to the dispute" but not any purported limitation imposed by the Suit Provision. (Doc. 200-1 at 63.) Tolling only the longer statute of limitations but not a shorter contractual limitation would render the tolling meaningless. Moreover, Zurich's interpretation would create an absurd result where an insured must often file suit before a coverage denial or any breach of the Policy. According to Zurich, First Solar was required to file suit months before Zurich's March 2021 deductible-reversal letter and while Zurich's review of the Claims was still "ongoing." (*See* Doc. 100-3 at 2.) Had it done so, no doubt Zurich would have challenged the existence of a justiciable controversy.

## C. Zurich's Contention that the District Court Applied a Medical Malpractice Statute of Limitation Is Misleading.

Zurich's contention that the District Court held that "a medical malpractice statute of limitation can supplant a shorter contractual limitations period in a property insurance contract" is a strawman argument. (*Cf.* Appellant's Br. ii, 9.) The District Court properly interpreted the Suit Provision by applying standard principles of Georgia contract interpretation. (*See, e.g.*, Doc. 177 at 5–6; 177-1 at 5–8, 12–14.) Zurich is wrong that the District Court held that a "medical malpractice statute of limitation" supplanted the Suit Provision. The District Court never held that *Spivey v. Whiddon*, 260 Ga. 502, 397 S.E.2d 117 (1990), or O.C.G.A. § 9-3-72 somehow directly applied to this case. (Doc. 177-1 at 9.) Rather, the District Court referenced

*Spivey* by "analogy" to explain that a discovery rule—even one that is a time-limitation—does not shorten the time in which a suit may be brought but rather prevents a claim from being barred for a period of time after its existence becomes known to the injured party. (Doc. 177 at 3, 7–8 (citing *Spivey*, 260 Ga. at 503–04); Doc. 177-1 at 9–14.)

Similarly, Zurich's contention that Georgia *statutory* law does not provide a discovery rule for property claims is inapposite to whether the parties *contractually* agreed to a discovery provision. As the District Court astutely noted, "Zurich manages both to miss the point and make the point." (Doc. 177 at 7.) It is precisely because Georgia statutory law does not contain a statutory discovery rule that parties would agree to a contractual discovery rule.

### D. Zurich's "Converse Interpretation" Is Unreasonable and Self-Defeating.

After seven pages of lip service to "plain language," Zurich eventually asks the Court to adopt a "converse interpretation" of the Suit Provision. (Appellant's Br. 33) Far from aiding Zurich's argument, its admission that it seeks a "converse interpretation" (actually, the inverse interpretation)[9] of the Suit Provision's actual text only highlights the flaws in Zurich's analysis.

---

[9] Zurich seeks not a "*converse* interpretation" but an "*inverse* interpretation." A converse statement switches the order of the condition and result, while an inverse negates both the condition and result. Zurich wants to imply the inverse: *if* a suit is not "commenced within (12) twelve months," *then* it will be barred. Regardless,

Zurich's inverse-interpretation-through-inference violates established principles of contract interpretation and is logically invalid. First, contract terms must be given their "usual and common" meaning, not an inverse inferred meaning. O.C.G.A. § 13-2-2(2). An insurance policy must "be read as a layman would read it and not as it might be analyzed by . . . an attorney." *Ga. Farm Bureau Mut. Ins. Co. v. Huncke*, 240 Ga. App. 580, 581, 524 S.E.2d 302, 303 (1999). "The natural, obvious meaning is to be preferred over any curious, hidden meaning," such as an inferred meaning, "which nothing but the exigency of a hard case and the ingenuity of a trained and acute mind would discover." *Lester v. Great Cent. Ins. Co.*, 138 Ga. App. 353, 355, 226 S.E.2d 149, 150 (1976). Where the terms are "plain and obvious, they must be given their literal meaning and no new terms can be inserted" or inferred. *Frey v. Nationwide Mut. Ins. Co.*, 371 Ga. App. 590, 593, 901 S.E.2d 730, 734 (2024) (quotation omitted). Zurich's interpretation is not the "literal meaning" of the text but an inverse meaning Zurich infers from reading between the lines. At minimum, Zurich's inverse-interpretation-through-inference is not "explicit, prominent, clear and unambiguous" as required for an enforceable exculpatory clause. *Monitronics Int'l, Inc. v. Veasley*, 323 Ga. App. 126, 135, 746 S.E.2d 793, 802 (2013).

---

inferring a converse interpretation is equally illogical. Take, for example, the statement that "if it rains, then the lawn is wet." One cannot logically infer from that statement the converse: "if the lawn is wet, then it rained."

Second, Zurich's inverse-interpretation-through-inference is logically flawed. As a matter of elementary logic, an inverse may not be validly inferred. Take, for example, the statement that "if Queen Elizabeth is an American citizen, then she is a human being." One may not logically infer the inverse: "Queen Elizabeth is not an American citizen. Therefore, she is not a human being." This is not the first time Zurich's logical lapse on the Suit Provision has been taken to task. *Northwest Steel* held Zurich's reasoning was "fallacious," explaining that Zurich employed a logical fallacy known as "denying the antecedent" or the inverse fallacy. 2008 WL 187687, at *1 & n.5. Zurich's erroneous interpretation must be disregarded, even as an ambiguous interpretation, because it is not "logical and reasonable." *See Ga. Farm Bureau Mut. Ins. Co. v. Meyers*, 249 Ga. App. 322, 324, 548 S.E.2d 67, 69 (2001).

### E.    Alternatively, the Suit Provision Is Ambiguous and Must be Interpreted in First Solar's Favor.

For the reasons explained above, the Suit Provision is an unambiguous time-expansion provision, and Zurich's inverse interpretation is implausible, illogical, and unreasonable. Even if the Court disagrees, however, "[w]here an insurance contract is ambiguous or is capable of being construed variously, it must be construed against the insurer and in favor of the insured." *McEver v. Nw. Mut. Life Ins. Co.*, 629 F. Supp. 3d 1340, 1354 (M.D. Ga. 2022) (quoting *Erie Indem. Co. v. Lascala*, 206 Ga. App. 283, 284, 424 S.E.2d 820, 822 (1992)); *Meyers*, 249 Ga. App. at 324 ("Where a term of a policy of insurance is susceptible to two or more

constructions, even when such multiple constructions are all logical and reasonable, such term is ambiguous." (citations omitted)).

Zurich has itself argued for two plausible interpretations: first, a "direct interpretation" of the "plain language of the Policy" that "if an action is brought within 12 months of the Named Insured (First Solar) knowing of the 'Occurrence', then it is not barred," and, second, a "converse interpretation," which Zurich infers from the terms. (Doc. 152 at 9–10.) This argument is self-defeating: "[I]f the language is susceptible to two different constructions the one most favorable to the insured will be adopted." *Zurich Am. Ins. Co. v. Bruce*, 193 Ga. App. 804, 806, 388 S.E.2d 923, 926 (1989) (quotations omitted). At minimum, First Solar's interpretation is *a* reasonable and logical interpretation of the Suit Provision. The District Court made the same alternative holding:

> Further, even assuming Zurich's clause could, by some logic, be interpreted to mean "will be barred" notwithstanding its actual wording, that would mean that, at best, the clause can be read different ways. If so, it is ambiguous and must be construed against Zurich. *See Pilz v. Monticello Ins. Co.*, 267 Ga. App. 370, 371-72, 599 S.E.2d 220, 221 (2004) ("Under the rules of contract construction, the policy is construed against the insurer as the drafter of the policy and any exclusions from coverage are strictly construed.").

(Doc. 177 at 8.) Thus, even if Zurich could establish a second reasonable interpretation of the Suit Provision, the Court should affirm the District Court's summary judgment ruling as "right for any reason."

**F.    Alternatively, Georgia's *Queen Tufting* Rule Requires a Six-Year Limitation Period.**

Even if Zurich's interpretation of the Suit Provision had merit, Georgia law would still require a six-year limitation period because the Suit Provision only applies "unless a longer period of time is required by *applicable statute*." (Doc. 102-1 at 63 (emphasis added).) In *Queen Tufting Co. v. Fireman's Fund Insurance Co.*, the Georgia Supreme Court held that a contractual limitation providing that "No suit or action on this policy . . . shall be sustainable in any Court . . . unless commenced within twelve (12) months next after the happening of the loss, *unless a longer period of time is provided by applicable statute*" required Georgia's six-year statute of limitations for contract actions—*i.e.*, the "applicable statute." 239 Ga. 843, 843, 239 S.E.2d 27, 28 (1977) (emphasis added).

The Suit Provision contains almost identical language to the provision in *Queen Tufting*. The relevant clause differs only in using the term "required" instead of "provided." In this context, the two words are synonymous because the verb "provide" in terms of a law means "(of a law or contract) to state that something must happen or be done." *Provide*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/provide. Thus, one could equally say that "[t]he new statute provides for life imprisonment without parole" or the "[t]he new statute [requires] life imprisonment without parole." *See id.*

Even if the Court concluded the Suit Provision was a contractual limitation, the Court should affirm on this alternative basis noted by the District Court:

> Even if the Court were persuaded that "unless a longer period of time is required by state law" refers to the statute of limitations, that phrase could be interpreted to mean that the six-year statute of limitations supplants any shorter suit limitation clause found in the policy. *See Queen Tufting Co. v. Fireman's Fund. Ins. Co.*, 239 Ga. 843, 843, 239 S.E.2d 27, 28 (1977) (holding that the six-year statute of limitations applied over a twelve-month suit limitation clause because the clause contained the phrase "unless a longer period of time is provided by applicable statute").

(Doc. 177 at 6 n.4.)[10]

## III.    The District Court Properly Denied Zurich's Last-Ditch Sanctions Motion and Zurich Waived Any Objection or Right to New Trial.

### A.    First Solar Disclosed the Documents upon Which Its Computation of Damages Was Based.

Dispositively, Zurich establishes no disclosure violation and certainly no abuse of discretion by the District Court. *See Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1146 (11th Cir. 2006) (holding review of sanctions order "is sharply limited to a search for an abuse of discretion"). In this latest incarnation,[11]

---

[10] For all of these reasons, the Court should affirm the District Court's partial summary judgment ruling on the Suit Provision. Even if the Court were to disagree, however, Zurich is not entitled to dismissal. Zurich does not contest the District Court's holding that First Solar presented sufficient evidence for a reasonable jury to find that Zurich waived application of a contractual limitation provision, (Doc. 116 at 23), and this case would need to be remanded for trial on this issue.

[11] Zurich contends the District Court improperly focused on whether Mr. Garrett had been disclosed as a witness. Zurich's initial sanctions motion, however, primarily

Zurich contends that First Solar violated the "initial disclosure" requirement of Federal Rule of Civil Procedure 26(a)(1)(A)(iii). That provision requires a party to disclose "a computation of each category of damages claimed by the disclosing party" as well as documents "on which each computation is based." Fed. R. Civ. P. 26(a)(1)(A)(iii). In fact, First Solar disclosed all damages it sought, (*compare* Docs. 189-2 at 10, *with* Doc. 204), and produced all documents it relied upon to compute and prove its damages, (Docs. 201-1–201-11, 202-1–202-26.) First Solar further disclosed that its damage computation was based on the same documents provided during adjustment of the Claims. (Doc. 189-2 at 10.)

Although Zurich repeatedly alleges deficiencies, it tellingly never quotes or analyzes the challenged disclosure because the sufficiency of First Solar's disclosure is manifest. (*See id.*) Zurich complains that the District Court did not consider whether any disclosure violation was "substantially justified or harmless," but the District Court explicitly (and quite adamantly) held there was no violation. (Docs. 208 at 1–9; 227 at 9–10.) Zurich does not establish that the District Court abused its discretion but rather tries to hand wave a violation into existence by summarily concluding that a violation was "undisputed," citing *its own motion* for support. (*See* Appellant's Br. 35.)

---

alleged a failure to disclose Ted Garrett. (Doc. 189). Zurich pivoted after that allegation was thoroughly discredited by First Solar, (Doc. 207 at 5–9), and rejected by the District Court, (Doc. 208 at 1–8).

Not only has Zurich failed to establish any disclosure violation—much less an abuse of discretion—its own allegations establish it is not even complaining about documents and information required under Rule 26. Boiled down, Zurich makes two complaints: (1) First Solar failed to disclose its "Project Information Management System" or "PIMS" database by name and (2) First Solar did not produce various "proof of payment" or construction/staffing records which Zurich maintains the jury should have required. Even though PIMS was disclosed in discovery, no provision of Rule 26 required First Solar to affirmatively disclose the name of a document management database. Likewise, no provision of Rule 26 required First Solar to initially disclose documents beyond those upon which its damages "computation is based" or that it "may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii)–(iii). No authority supports Zurich's contention that Rule 26 mandates production of "all information on this issue, including relevant documents, even without a discovery request." (*Cf.* Appellant's Br. 34.) Of course, had Zurich genuinely believed these documents relevant, it could have easily requested them in discovery and raised a discovery dispute if it believed they had not been produced. Its failure to do so, however, establishes no discovery violation.[12]

---

[12] Although Zurich makes a half-hearted argument that it requested "exactly this type of documents," it cites no such discovery requests but rather only generally cites to First Solar's initial disclosures, (Doc. 189-2); Zurich's entire discovery requests, (Doc. 189-3); First Solar's responses, (Doc. 189-4); and an affidavit incorrectly stating that First Solar produced no documents with the words "PIMS," (Doc. 203).

**B.    First Solar Produced All Documents Submitted at Trial and Disclosed All Witnesses Who Testified.**

Even apart from the lack of any Rule 26 violation, Zurich's claims of "concealment" and "trial by ambush" are disingenuous. Every witness testifying at trial, and the subjects upon which he would testify, were disclosed *months* before trial. Likewise, every document First Solar introduced into evidence had been produced *over a year* before trial. (*See* Docs. 47; 189-2.) Far from being a surprise, First Solar's damages were precisely the same damages it had sought in the insurance adjustment process and were calculated based on Zurich's own February 2021 damages analysis which the parties identified as a joint exhibit. (Doc. 201-7.)

Zurich's own filings likewise evidence that it understood First Solar's damages. As just one example, Zurich's own "brief and succinct outline of the case" in the Pretrial Order accurately set forth the damages sought by First Solar. (Doc. 200 at 4.) Likewise, during the adjustment process Zurich itself verified over $4.9 million of First Solar's damages, and Zurich stipulated to these damages at trial. (Doc. 200-2 at 2–3.) At no point prior to the last day of trial did Zurich question the

---

(*See* Appellant's Br. 39.) None of those general citations support Zurich's contention. The fact is Zurich never sought production of such documents, never alleged during discovery that these documents were responsive to its discovery requests, never attempted to meet-and-confer with First Solar, never raised a dispute with the Court, and never filed a motion to compel.

adequacy of First Solar's disclosures because it had known First Solar's alleged damages for years.

Zurich's contention that it was "ambushed" by Ted Garrett's testimony is not credible. First Solar promptly and properly disclosed Ted Garrett as a potential witness. (Doc. 189-2 at 8.) Over the course of discovery, Zurich was repeatedly informed that Ted Garrett was the project manager for the Twiggs Project. (*See* Doc. 207 at 5–7 (summarizing the disclosures of Ted Garrett).) And Zurich was informed months before trial that Ted Garrett was one of two live witnesses First Solar intended to call at trial and one of the two witness who "[m]ost of our proof will come through." (Doc. 174 at 62.) First Solar's response to Zurich's trial brief on damages even laid out exactly how First Solar intended to use Mr. Garrett's testimony to respond to Zurich's arguments. (Doc. 151 at 8-9.) Zurich's alleged "surprise"—if genuine—is wholly attributable to Zurich's decision not to depose him after he was disclosed multiple times in discovery, not to any action of First Solar.

Zurich's contention that First Solar relied upon "surprise" documents to prove its case is equally baseless. Every single document First Solar relied upon or introduced as evidence was produced in discovery. Zurich complains at length that Garrett testified about various proof of payment documents or labor/construction records, but contrary to Zurich's allegations, *First Solar did not elicit this testimony*

- 47 -

*or rely on these documents or testimony about these documents to prove its damages.* Rather, it was Zurich's counsel who asked on cross examination about these documents—*100% of the testimony Zurich cites is of its own counsel cross-examining Mr. Garrett.*

In many ways, Zurich's argument reads less like a discovery or disclosure issue and more like a challenge to the sufficiency of First Solar's evidence. For example, Zurich frequently contends that First Solar did not introduce "documentation that was specific and essential to First Solar's proof of damages" or that Zurich believed was "required." (Appellant's Br. 10, 39.) The jury and District Court disagreed, and Zurich has abandoned any challenge to the sufficiency of the evidence by not appealing the District Court's denial of its Rule 50(b) motion. (*See* Doc. 227 at 3–5.) Regardless, First Solar painstakingly introduced evidence and testimony individually establishing each of its losses using precisely the same type of documentation Zurich itself relied upon during the adjustment process to verify $4,917,303 in losses. (Docs. 202-2 at 2; 211 at 208; 212 at 48–49.)

Moreover, it is simply not credible for Zurich to claim any genuine surprise at the testimony it elicited. Zurich cannot credibly claim that it only realized for the first time upon hearing Mr. Garrett's testimony at trial that there might be receipts or "proof of payment" documentation evidencing First Solar's payments of over $10.7 million (over $4.9 million of which Zurich had already verified), that First

- 48 -

Solar in fact approved $10.7 million in change orders, or that there might be construction or labor records for the $10.7 million in work performed. Equally suspect is Zurich's claim of shock that First Solar maintained an electronic document management database for records pertaining to a $185 million solar farm project. Even so, numerous documents produced by both First Solar and Zurich—including documents on Zurich's trial exhibit list—identified the PIMS system by name. (*See* Doc. 207 at 10–11 (collecting a multitude of produced documents and trial exhibits referring to the project information management system or "PIMS").)

### C.    Zurich's Last-Ditch Sanctions Motion Also Fails Procedurally.

#### 1.    *Zurich Waived Any Objection to the Testimony and Evidence by Failing to Timely Object.*

As the District Court correctly held, Zurich waived any objection to the evidence presented by not timely objecting. "[A] timely objection is necessary to bring to the trial court's attention alleged errors in the conduct of the trial." *McBride v. Carnival Corp.*, 102 F.4th 1194, 1203 (11th Cir. 2024) (quotation omitted). This is not just a technical omission. "Requiring timely objection prohibits counsel from 'sandbagging' the court by remaining silent and then, if the result is unsatisfactory, claiming error." *Id.* (quotation omitted). That, of course, is exactly what occurred here. Zurich made no contemporaneous objection during Mr. Garrett's testimony when any alleged error could be addressed and corrected. Instead, Zurich waited to file its motion on the last day of trial, two days after Mr. Garrett's testimony, after

the last live witness was already on the stand, and shortly before the jury would begin its deliberations. It did so without any notice to First Solar or the District Court. Zurich's motion was a transparent, last-ditch effort to scuttle a forthcoming jury verdict that Zurich anticipated would be entered in favor of First Solar and against Zurich. By not timely objecting, Zurich waived its right to seek relief.

### 2.    *Zurich's Failure to Appeal the Denial of Its Motion for New Trial Precludes the Relief It Seeks.*

Following the entry of judgment, Zurich specifically moved for a new trial based on the alleged non-disclosure of documents, and the District Court denied that motion. (Docs. 215 at 2; 227 at 9-10.) Although Zurich had earlier filed a notice of appeal, Zurich neither filed a second notice of appeal nor amended its notice of appeal to encompass the later order denying its new trial motion. As the time for appeal has now passed, the District Court's denial of Zurich's motion for a new trial is now final and Zurich's request for a new trial is not properly before this Court.

### 3.    *Zurich Has Not Established Prejudice to Warrant a New Trial.*

As this is a discovery issue, Zurich "is not entitled to a new trial for an alleged discovery violation unless it shows that the denial of access to evidence was prejudicial to its substantial rights." *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1274–75 (11th Cir. 2015) (citation omitted). This "requires a showing of 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* (quotation omitted); *see*

*also In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*, 85 F.4th 1070, 1096 (11th Cir. 2023) ("We will not overturn discovery rulings unless the ruling resulted in substantial harm to the appellant's case." (punctuation and quotation omitted)). Zurich's brief fails to establish how these alleged documents would support any defense, much less that "the result of the proceeding would have been different." *See Ziplocal*, 795 F.3d at 1274 (quotation omitted).

> 4.    *Any Error Is Harmless Because No Evidence That Would Have Been Excluded by Zurich's Motion Was Admitted.*

Even if Zurich established any abuse of discretion, any error would be harmless. As Zurich concedes, the remedy for an alleged non-disclosure would be the exclusion of that evidence. Here, no non-disclosed evidence was introduced. Accordingly, any error would be harmless. *See Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1309 (11th Cir. 2023) ("[E]ven a clearly erroneous evidentiary ruling will be affirmed if harmless.").

## IV.    Alternatively, if the Court Does Not Affirm, the District Court Erred in Holding the Applicable Deductible Was $2.5 Million.

The Court should affirm without reaching or considering this issue. Alternatively, however, the District Court erred by holding that the applicable deductible was $2.5 million absent waiver. This decision should be reversed for three independent reasons: (1) a $100,000 deductible applies based on the plain language of the Policy; (2) First Solar presented sufficient evidence for a jury to reform the

- 51 -

Policy Certificate based on the parties' mutual misunderstanding of the flood zone applicable to the "Insured Project" (*i.e.*, the Twiggs Project); and (3) a reasonable jury could conclude that Zurich did not meet its burden to prove that rainwater accumulating over several days was "rapid" and that similar rainstorms occurring almost monthly were "unusual."

**A.    The Plain Language of the Policy Controls Over the Project Certificate and Requires a $100,000 Deductible Based on the Location of the Insured Project.**

The District Court erroneously concluded that a $2,500,000 deductible applied (absent waiver) because the plain language of the Policy requires a $100,000 deductible. In the relevant "**APPLICATION OF DEDUCTIBLES**" section, the Policy states, "The applicable deductible *shown in the SCHEDULE OF RATES AND DEDUCTIBLES* shall be deducted from the amount of each claim" and shall be based on "each **INSURED PROJECT\*** that sustains loss or damage." (Doc. 200-1 at 24–25 (emphasis added); *see also* Doc. 200-1 at 12 ("See Rate/Deductible Schedule for applicable rates and deductibles.").) The Policy in turn defines the "Insured Project" as the "[w]ork which [First Solar] is contractually obligated to perform in accordance with the contract documents," *i.e.*, the Twiggs Project. (Docs. 200-1 at 31, 74.)

The Policy's "Schedule of Rates and Deductibles" provides that the deductible for an Insured Project within Flood Level 3 is $100,000.[13] (Doc. 200-1 at 36.) The Policy's "Catastrophe Zones" endorsement explains that an Insured Project in "Zone Unshaded X" is within Flood Level 3. (*Id.* at 68.) The Twiggs Project, *i.e.* the "Insured Project," was constructed entirely in Flood Zone Unshaded X. (Docs. 90-7 at 14, 16–17; 200-1 at 36.) Thus, the applicable deductible should have been $100,000 because the "Insured Project" was located in Flood Zone Unshaded X and subject to the Flood Level 3 deductible of $100,000.

Zurich does not contest that the Twiggs Project was located entirely within Flood Zone Unshaded X or that a $100,000 deductible should have been applied according to the plain language of the Policy. Zurich's 30(b)(6) witness agreed that if the "Insured Project" was in Flood Zone Unshaded X a $100,000 deductible should apply:

> Q:     But if [the Insured Project] was [in Zone Unshaded X], Zurich's intent was that it would be $100,000, instead of [$]2.5 [million], correct?
>
> A:     Yes, if it had been in a lower flood zone, it would have been -- it would have been $100,000.

(Doc. 83-2 at 44.) Instead, Zurich relies on its own unilateral determination in the Project Certificate that the deductible was 2% with a $2.5 million maximum. (*See*

---

[13] Although the schedule is not titled, Zurich confirmed the schedule at Policy pages 34 and 35 is the Schedule of Rates and Deductibles. (Doc. 83-2 at 37–38.)

Doc. 90-15 at 11.) Zurich previously conceded, however, that it made that determination based not on the actual location of the approximately 1,000-acre Twiggs Project (which had not yet even been determined) but rather based on the total 2,741-acre parcel (which Zurich confusingly called the "project site") belonging to Twiggs County Solar LLC. (*See* Docs. 90-12 at 2; 84-1 at 14, 16; 83-2 at 41.) It likewise admitted that the deductible should have been set based on "the exact location and footprint of the project." (*See* Doc. 90-12 at 2.)

The District Court applied a $2.5 million deductible notwithstanding this error because it concluded that "both parties understood that Zurich's flood zone determination was based on the 'larger' project site." (Doc. 116 at 36.) The District Court relied upon one email in which First Solar was told that "the *project* is located in high hazard flood zone." (Doc. 88-62 at 2 (emphasis added).) Far from disclosing Zurich's erroneous flood deductible determination, that reference to the "project" location misleadingly implied that Zurich had correctly calculated the flood zone based on the "Insured Project."

In addition to Project Certificate being incorrect, the District Court erroneously relied upon the Project Certificate for three additional reasons. First, the plain language of the Policy states the applicable deductible should be determined by reference to the "Schedule of Rates and Deductibles," not by reference to the Project Certificate. (Doc. 200-1 at 24.) The Project Certificate likewise "follows

- 54 -

[the] terms and conditions of [the] Policy," not the other way around. (Doc. 200-1 at 74.) Second, when a policy and policy certificate contain conflicting provisions, the policy controls. *Cherokee Credit Life Ins. Co. v. Baker*, 119 Ga. App. 579, 584–85, 168 S.E.2d 171, 175 (1969); *Morrison Assur. Co. v. Armstrong*, 152 Ga. App. 885, 886–87, 264 S.E.2d 320, 322 (1980). In *Cherokee Credit Life Insurance*, the Georgia Court of Appeals considered a conflict between a policy stating that the coverage limit for an insured between 61 and 65 years old was $5,000 and a policy certificate stating that the coverage limit for a 62-year-old insured was $10,000. 119 Ga. App. at 579. The Court held that the parties were "bound by the provisions of the master policy" and the coverage limit was $5,000 notwithstanding the contrary policy certificate. *Id.* at 584–85. Third, the conflict between the Policy and the Policy Certificate creates two potential interpretations of the applicable deductible. In this situation, Georgia law requires that "the one most favorable to the insured will be adopted." *Bruce*, 193 Ga. App. at 806.

**B.    First Solar Presented Sufficient Evidence for a Jury to Reform the Mistakenly Identified the Flood Zone.**

Even if the plain language of the Policy did not require a $100,000 deductible, First Solar presented sufficient evidence to reform Zurich's erroneous deductible determination in the Project Certificate. A "mutual mistake" is an unintentional act, omission, or error that is shared by or common to both parties and requires the parties to have "labored under the same misconception." *Yeazel v. Burger King Corp.*, 241

Ga. App. 90, 94, 526 S.E.2d 112, 116 (1999) (quotation omitted). First Solar presented evidence that the parties mistakenly and prematurely applied a deductible for flood "Zone A" when the Insured Project was actually and ultimately in flood "Zone X unshaded." (*See, e.g.*, Doc. 90-7 at 14–16.) Despite intending for the "Flood" deductible to reflect the location of the Twiggs Project, Zurich mistakenly set the "Flood" deductible based on the total 2,741-acre parcel (which it called the "project site") belonging to Twiggs County Solar LLC. (Docs. 90-12 at 2; 84-1 at 14, 16; 83-2 at 41.) As the District Court noted, Zurich set this deductible before the final location of the Twiggs Project had even been determined. (Doc. 116 at 37.) No Zurich or First Solar witness contests that, if the parties had correctly identified the location of the "Insured Project" when issuing the Project Certificate, the "Flood" deductible would be $100,000 instead of $2.5 million.

The District Court concluded based on three emails that "both parties knew the flood zone was set using the entire project site" such that there was "no evidence of a mutual mistake." (Doc. 116 at 39.)[14] While these emails establish that the flood zone was set incorrectly based on the entire 2,741-acre parcel, they do not establish the parties' intent and certainly do not preclude a jury finding a mistake. To the contrary, they indicate that the parties intended the flood deductible to be based on

---

[14] The very use of the words "project site" confirms the mistake: Zurich mistakenly conflated the entire parcel (represented by a site plan) with the actual location of the Twiggs Project.

- 56 -

the "exact location and footprint of the project," (Doc. 90-12 at 2); that Zurich (presumably mistakenly) misinformed the broker that "[a] significant amount of the project is located in the 100 year flood plain," (Doc. 90-14 at 2); and that the broker, in turn, told First Solar that "Zurich confirmed the majority of the project is located in [a] high hazard flood zone," (Doc. 88-62 at 2). These emails—coupled with the descriptions of the "Insured Project" in the Policy and the admissions that the wrong flood deductible was stated based on the actual Twiggs Project location—evidence a mutual mistake such that First Solar's reformation claim should have been submitted to the jury. *See, e.g.*, *Rasmussen v. Martin*, 236 Ga. 267, 267, 269, 223 S.E.2d 663, 665 (1976) (holding jury should evaluate mutual mistake where descriptions of lot in contract varied from description of lot in deed); *JPMorgan Chase Bank v. Cronan*, 355 Ga. App. 556, 561, 562–63, 845 S.E.2d 298, 303 (2020) (holding fact issue existed as to mutual mistake where loan-related documents contained internal inconsistencies by referencing two separate properties); *Whitcomb v. Bank of Am.*, 365 Ga. App. 795, 796, 803–04, 880 S.E.2d 310, 319 (2022) (mutual mistake plainly shown where the appraisal reports reflected a shared belief that home was located on unimproved parcel instead of improved parcel).

## C.  Zurich Did Not Prove an "Unusual and Rapid" Accumulation as Required to Establish that the Cause of Loss was "Flood."

The District Court erroneously granted Zurich summary judgment that the cause of loss was "Flood" because a reasonable jury could conclude that rainwater

accumulating over several days was not "rapid" and that similar rainstorms occurring almost monthly are not "unusual." The Policy defines "flood" as:

8.    **<u>FLOOD</u>**

**FLOOD\*** means:

**A.**    A general and temporary condition of partial or complete inundation of normally dry land areas, including dewatered areas, from:

**(1)**    The rising, overflow, or expansion beyond normal boundaries of any body of water or watercourse, whether such body of water or watercourse is natural or man made;

**(2)**    The release or breaking of the boundaries of natural or man-made bodies of water or watercourses including the release or overflow of any water impounded by a dam, dike, reservoir or any other barrier or diversionary device;

**(3)**    Tsunami, waves, tide or tidal waters, and storm surge;

**(4)**    The unusual and rapid accumulation or runoff of surface waters from any source;

**(5)**    Mudslides or mudflows where mudslide or mudflows means a river of liquid and flowing mud on the surfaces of normally dry land areas, as when earth is carried by a current of water and deposited along the path of the current;

or the spray from any of the foregoing, whether driven by wind or not.

(Doc. 200-1 at 30–31.) Subparts (1)–(3) and (5) of the "flood" definition do not apply to the rainstorms in this case; the question is whether subpart (4) applies.

The District Court erred by deciding that the rainstorms caused "rapid" and "unusual" accumulation as a matter of law. The District Court found that five rainstorms occurred over about a four-month-period and that each rainstorm "lasted, at most, *a few days*." (Doc. 116 at 4, 29 (emphasis added) (citing Doc. 88-2, ¶¶ 33, 50; Doc. 100-1, ¶¶ 33, 50).) It did not analyze, however, whether the rainstorms lasting a few days were "rapid," which it defined as "quick, swift, [and] fast," or whether the monthly rainstorms were "unusual," which it defined as "uncommon." (*See id.* at 25, 31.) Instead, it concluded—without explanation—"[i]t is beyond any reasonable dispute that is what happened here." (*Id.* at 31.)

The District Court only relied upon facts that "[i]t did not rain continuously at the Twiggs *Project from December 13, 2019 until April 18, 2020*"; that "rainstorms occurred on and off over the course *of a few days*"; and that the "Twiggs Project occupied normally dry land." (Doc. 116 at 5, 6 n.3 (emphasis added) (quoting Docs. 88-2 at ¶¶ 33, 50; 102-1 ¶ 47).) None of those facts meets Zurich's burden to establish a "rapid" and "unusual" accumulation as a matter of law. *See Canal Ins. Co. v. Bryant*, 173 Ga. App. 173, 174, 325 S.E.2d 839, 841 (1984) (holding the insurer had the burden to prove which of two alternatives in a "limit of liability" provision yielded the lower loss). On the other hand, First Solar presented testimony that Zurich could not determine whether the rainwater accumulation was "rapid." (Doc. 65-4 at 22, 24.) And both Zurich's witnesses and a firsthand First Solar witness

- 59 -

testified that the rainstorms were not "unusual." (Docs. 63-4 at 38; 65-4 at 31; 90-20 at 10.)

Georgia law allows courts to construe contracts, but "[w]here any matter of fact is involved, the jury should find the fact." O.C.G.A. § 13-2-1. Whether an event is "rapid" or "unusual" is a subjective, factual determination. A reasonable jury could conclude that rain accumulating over *a few days* is not a "rapid" accumulation and that similar rainwater accumulations happening monthly are not "unusual." "Even when the underlying facts are undisputed, summary judgment is improper if those facts can lead to conflicting inferences on material issues." *See Carrizosa v. Chiquita Brands Int'l, Inc.*, 47 F.4th 1278, 1328 (11th Cir. 2022). Determining whether undisputed facts meet subjective standards in an insurance policy is the role of the jury. *See, e.g.*, *S. Ry. Co. v. State Farm Mut. Auto. Ins. Co.*, 477 F.2d 49, 51 (5th Cir. 1973) (holding, even where the basic facts are undisputed, under Georgia law, the trier of fact is entitled to draw inferences or overall conclusions as to whether a vehicle was furnished for "regular use" within the meaning of an insurance policy"); *Jefferson Amusement Co. v. Lincoln Nat'l Life Ins. Co.*, 409 F.2d 644, 649–50 (5th Cir. 1969) (holding whether insured was in "good health" within the meaning of life insurance policy "without question was a jury issue"); *Columbian Nat'l Life Ins. Co. v. Miller*, 140 Ga. 346, 78 S.E. 1079, 1080 (1913) (holding whether decedent died through "accidental means" within the meaning of life insurance policy was a

jury question). As "reasonable minds might differ on the inferences arising from [the] undisputed facts, summary judgment should not be granted, and a fact finder should be permitted to determine which inferences to accept." *Carrizosa*, 47 F.4th at 1334 (quotation omitted).

## CONCLUSION

For these reasons, the Court should affirm the District Court's order and judgment.

Respectfully submitted this 29th day of October, 2025.

**BRADLEY ARANT BOULT CUMMINGS LLP**

*/s/ Justin P. Gunter*
Justin P. Gunter (GA Bar No. 969468)
1230 Peachtree Street NE, 21st Floor
Atlanta, Georgia 30309
Telephone: (404) 868-2100
jgunter@bradley.com

Alex Purvis (MS Bar No. 100673)
188 E. Capitol Street, Suite 1000
Jackson, MS 39201
Telephone: (601) 948-8000
apurvis@bradley.com

Richard H. Monk III (GA Bar No. 557208)
Emily M. Ruzic (GA Bar No. 765877)
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone: (205) 521-8000
rmonk@bradley.com
eruzic@bradley.com

**WATSON SPENCE LLP**

F. Faison Middleton, IV (GA Bar No. 504755)
P.O. Box 2008
Albany, GA 31702-2008
Telephone: (229) 436-1545
fmiddleton@watsonspence.com

*Counsel for Appellee/Cross-Appellant*
*First Solar Electric LLC*

- 62 -

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS</u>

This brief complies with the word limit of Fed. R. App. P. 28.1(e)(2)(B)(i) because this brief contains 15,213 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.

This document complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6). It has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Justin P. Gunter*
Justin P. Gunter

*Counsel for Appellant/Cross-Appellee First Solar Electric LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 29, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by e-mail sent by the appellate CM/ECF system to:

> Laurie Webb Daniel
> Skyler McDonald
> WEBB DANIEL FRIEDLANDER LLP
> 75 14th St. NE, Ste 2450
> Atlanta, GA 30309
> 404-433-6430
> laurie.daniel@webbdaniel.law
> skyler.mcdonald@webbdaniel.law
>
> Anthony Morris
> Brittanie Browning
> AKERMAN LLP
> 999 Peachtree Street NE, Ste 1700
> Atlanta, GA 30309
> 404-733-9800
> anthony.morris@akerman.com
> brittanie.browning@akerman.com

Pursuant to 11th Cir. R. 31-3, at the conclusion of briefing First Solar will also send the required number of copies of this brief to the Clerk of Court.

> */s/ Justin P. Gunter*
> Justin P. Gunter
>
> *Counsel for Appellant/Cross-Appellee First Solar Electric LLC*